## James Lord *versus* Amos Poor.

A writ of *replevin*, returnable before a justice of the peace, like other justice writs, is to be " duly served not less than seven, nor more than sixty days, before the day therein appointed for trial."

The right of the father to the earnings of a minor child arises out of his obligation to support and educate the child. And if the father emancipate the son, and allow him to provide for his own support and education by his own labor, the father does not thereby withdraw from his creditors any property or fund, to which they are legally or justly entitled for the payment of his debts.

Replevin for two heifers. The writ was dated Oct. 28, 1842, was served upon the defendant the next day, and was made returnable before a justice of the peace on Nov. 5, 1842. On the return day the defendant appeared, and pleaded in abatement, that by the return upon the writ it did not appear to have been served fourteen days before the day of the Court to which it was made returnable, and that therefore the service was insufficient. This plea was overruled by the justice. The defendant then pleaded the general issue, and filed a brief statement, alleging that he was a constable of the town of Denmark, and that he attached the heifers, as the property of L. J. Grover, the owner thereof, on a writ against him in favor of Swan. Judgment was rendered against the defendant by the justice, and he appealed to the District Court, and there insisted upon his plea in abatement, which was again overruled by Goodenow, District Judge. Evidence was then introduced tending to show that the property in the heifers was in J. N. Grover, a minor son of L. J. Grover; that the son had been emancipated by the father after the debt of Swan had accrued, but before the time of the attachment; and that the purchase of the heifers, whether made by the father or the son, or by them jointly, was made in August, 1841. These are all the facts appearing in the bill of exceptions.

The defendant's counsel requested the presiding Judge to instruct the jury, that the father cannot give the minor son his time, so as to deprive existing creditors of the right to the avails of the son's labor. The Judge refused to give this

instruction, and instructed them that the law was otherwise. The verdict was for the plaintiff in replevin, and the defendant claimed the right to appeal, which was denied by the Court. The defendant filed exceptions.

*S. H. Chase*, for the defendant, contended, that a replevin writ before a justice of the peace should be served fourteen days before the return day. The general grounds taken appear in the opinion of the Court.

The instruction requested by the counsel for the defendant should have been given. On this point, the decided cases neither directly controvert nor sustain the instruction requested ; and the principle is to be settled for the first time in this State. And it is contended, that justice and public policy require, that a different principle should be established from that indicated in the instruction of the District Judge.

Here the counsel made an elaborate argument in support of his position.

*A. R. Bradley*, for the plaintiff, examined the several statutes on the subject of service of replevin and justice writs, and contended that no longer time was required to be given in the service of writs of replevin, returnable before a justice, than of any other justice writs.

On the second point, he cited *Whiting* v. *Earle*, 3 Pick. 201 ; and insisted that the instruction of the Judge was in accordance with law, justice and sound policy.

The opinion of the Court, Tenney J. taking no part in the decision, was drawn up by

Shepley J. — It is contended, that the service of a writ of replevin, issued by a justice of the peace, must be made fourteen days before the return day. The statute, c. 116, § 6, provides, that " the writ in civil actions, commenced before a justice of the peace, shall be by a summons, or a capias and attachment ; and of the form prescribed in the one hundred and fourteenth chapter, and signed by the justice ; and such writ shall be duly served not less than seven nor more than sixty

Lord *v.* Poor.

days before the day therein appointed for trial." It is also provided by statute, c. 130, § 2, that the writ for the replevin of beasts distrained or impounded, issued by a justice of the peace, may be served and returned "in like manner, as is provided in the case of other civil actions before a justice of the peace, except as otherwise prescribed." And by the ninth section of the same chapter, that the writs for the replevin of goods "may be sued out, served and returned, like other writs in civil actions in all particulars, in which a different course is not prescribed." It is said that two kinds of writs only are provided for by the words "a summons or capias and attachment;" and that these are "a summons and attachment, or a capias and attachment." The writs named in that section are to be such, as are prescribed in c. 114. The first section of that statute declares, that the forms of writs shall remain as established by c. 63 of the statutes of 1821. The latter statute provided for two kinds of writs only, to be issued by justices of the peace, to be used in civil actions. One was denominated "summons for appearance," and it was in form of a common writ of summons, containing no command for the attachment of property. The other was denominated "capias or attachment," containing a command for an attachment of the goods or estate, and for want thereof to take the body. There is no such form of a writ prescribed by statute in *haec verba* as a writ of summons and attachment, as the argument supposes. Such a writ is in use, arising out of a modification of the form of the writ of capias or attachment, to make it conform to the requirements of certain statutes exempting the body from arrest. It is yet the same writ without any statute change of name. It therefore becomes certain, that the writ of summons, containing no command for the attachment of property, was intended to be described by the words, "the writ shall be a summons," contained in c. 116, § 6. And that the provision for the service of process by original summons, in c. 114, § 26, cannot apply, so far as it respects the time of the service of such a process, when issued by a justice of the peace; while it is applicable so far as it regulates the mode of

service. And the clause in c. 130, § 9, that replevin writs when issued by a justice of the peace and by the Courts, " in both cases may be sued out, served, and returned, like other writs in civil actions," becomes a plain direction, that such writs, issued by a justice of the peace, may be served as other writs issued by him in civil actions are served. The words " in all particulars in which a different course is not prescribed," have reference undoubtedly to the duty of the officer to take and return a bond, and to take and deliver the property, when he makes service of a writ of replevin. In these respects the service would not be like that of a writ in other civil actions. The plea in abatement was properly overruled.

It is further contended, that the District Judge ought to have complied with a request to instruct the jury, " that the father cannot give the minor son his time, so as to deprive existing creditors of the right to the avails of the son's labor." This request assumes, that a father has a present valuable property in the labor of a minor son, which his creditors have a legal right to have applied to the payment of their debts. The right of the father to the earnings of a minor child arises out of his obligation to support and educate the child. There cannot be necessarily any present valuable property in the future labor of a minor son. It is contingent, depending upon the health, life, and ability of the son to perform the labor. And if the labor be performed, it is justly subject in the first instance to a charge for the maintenance and education of that son. And no creditor of the father can have a right to have the proceeds of that labor applied to the payment of his debt to the exclusion of a proper education and maintenance for the son. If therefore the father emancipate the son, and allow him to provide for his own support and education by his own labor, he does not withdraw from his creditors any property or fund, to which they are legally or justly entitled for the payment of his debts.

*Exceptions overruled.*