DANIEL D. ATWOOD, TRUSTEE, vs. TUDOR F. HOLCOMB AND OTHERS.

A father, acting in good faith, may make a valid gift to his minor son of his time and future earnings, although insolvent at the time.

TROVER ; brought to the Court of Common Pleas of Hartford County, and tried. on the general issue, with notice, closed to the court, before *Briscoe, J.* Judgment for the plaintiff and motion for a new trial by the defendants. The facts are sufficiently stated in the opinion.

*Perkins,* with whom was *W. C. Case,* in support of the motion.

The gift of the father to the son, of the avails of his labor thereafter, was not valid as against those who were creditors of the father at the time. It is too well settled to need citation of authorities that an insolvent debtor cannot make a gift which will be valid as against existing creditors. It is also well settled that the policy of our law favors an appropriation of *all* available means of the debtor, of every kind, for the payment of his debts. *Ensworth* v. *Davenport,* 9 Conn., 393 ;

*Remington* v. *Cady*, 10 id., 47; *Davenport* v. *Lacon*, 17 id., 281; *Bray* v. *Wallingford*, 20 id., 419. All questions arising of this kind are to be so answered as to favor this appropriation. If the son had already worked, and wages were due to the father, there can be no question but that a gift of them would be void as against existing creditors. Why should any distinction be made between a gift of wages due, and those to become due? The father has a *right* to the wages of his minor child. They are just as much his as his own wages, or those of his wife, as much as the avails of the labor of his hired man, his oxen or his horses. If these wages are due, a creditor may attach them. By emancipating his son therefore, the father deprives his creditors of property of which they have a right to avail themselves for the payment of their debts. Creditors may trust a man expressly on the ground that he has many children whose wages are available as his own to meet their claims. This would be especially so when the debts are incurred for articles of food and clothing for the family. It may be said that perhaps the children will not work if their wages go to pay their parents' debts. But parents have a right to *make* their children work. If they do not, the selectmen can make them. Rev. Stat., p. 308, §§ 43, 44, 45. This argument would apply just as much to the labor of the man himself, his wife, or his hired man. The probability of a child's or a man's working does not change the legal rights of the parties. The authorities hold that such a gift is void. Reeve in his treatise on Domestic Relations, says, (p. 423,) " The father can no more give to the child the avails of his service to the prejudice of his creditors, than he can any other property." *Chase* v. *Elkins*, 2 Verm., 290; *Bray* v. *Wheeler*, 29 id., 514; *Jenney* v. *Alden*, 12 Mass., 375; *Winchester* v. *Reid*, 8 Jones (Law,)377.

*Goodman*, contra, cited *Welton* v. *Morse*, 6 Conn., 547; *Torrington* v. *Norwich*, 21 id., 543, 547; Reeve's Dom. Rel., 422, note; *Jenison* v. *Graves*, 2 Blackf., 440; *Chase* v. *Elkins*, 2 Verm., 290; *Chase* v. *Smith*, 5 id., 566; *Rush* v. *Vought*, 55 Penn. S. R., 437; *McCloskey* v. *Cyphert*, 27 id., 220; *Holdship*

v. *Patterson*, 7 Watts, 547 ; *Bray* v. *Wheeler*, 29 Verm., 514 ; *Nightingale* v. *Withington*, 15 Mass., 272, 275 ; *Corey* v. *Corey*, 19 Pick., 29.

SEYMOUR, J.   This case was tried in the Court of Common Pleas and judgment there given for the plaintiff.   The defendants seek for a new trial.   In their brief the defendants' counsel state the facts thus :

On the 23d of March, 1867, the plaintiff was indebted to the defendant Holcomb and was insolvent.   He had a son Arthur, seventeen years of age, and on that day gave him a letter of emancipation, by which he agreed that his services and future earnings, which then belonged to the plaintiff, should belong thereafter to the son.   There was no consideration whatever for this gift.   In September of that year Arthur negotiated for the purchase of a colt with one Hays, who completed the sale with the plaintiff's wife, and conveyed the title to her in the same month.   She paid therefor five dollars of her own, and Arthur thereafter caused $22.50 of his wages, earned after the date of the letter of emancipation, to be paid as part payment for the colt.   This colt was afterwards exchanged for a horse.   The defendants caused this horse to be attached in a suit against the plaintiff, and the plaintiff brings trover as trustee for his wife.

Upon these facts the defendants' counsel make the question —Was the gift of the father to the son, of the avails of his labor thereafter, a valid one as against those who were creditors of the father at the time ?   On examining the record it does not distinctly appear that the debt of the defendant Holcomb was prior in time to the letter of emancipation, but from what was said by counsel in the discussion we suppose in truth it was prior, and shall decide the case upon that as being the fact.   In regard to the insolvency of Mr. Atwood, the father, the finding is that at the time of the attachment he was, and for many years previous had been, shiftless and unable to pay his debts.

If the obligation of a minor child to labor for his father is in the nature of an ordinary debt and properly a thing in

action like a bond or promissory note, the argument of the defendant would have full force, that the father must be just before he is generous, and could no more forgive to his son the obligation of personal service, to the prejudice of creditors, than he could give away a valuable bond. But there are differences between an ordinary debt and a child's obligation to serve his father. If Mr. Atwood had died insolvent on the day of the date of the letter of emancipation, the law itself would have done for the son what the father attempted to do. The law would have given the son his time, and his earnings would thereafter have been his own. Neither the defendant nor any other creditor of the father would have any claim on the son that he should labor for the benefit of his father's estate. This duty of service is not assets like a bond in the hands of an administrator for payment of debts, nor for any purpose. So too in case of bankruptcy it is clear that the father's right to his children's services does not pass as assets for the benefit of creditors to the assignee in bankruptcy. The son therefore, is not in law regarded as an ordinary debtor to his father, nor is the father's right to the son's services regarded in law as mere property either in possession or in action. The right and the duty are in the main personal, and are founded on the intimate relation that during minority must necessarily exist between the parties. The age of twenty-one years is fixed by law as the utmost period of the relation, but it may be terminated before that period by the mutual agreement of the parties, so as to put an end to the duty of personal service. This was decided in *Welton* v. *Morse*, 6 Conn., 547. The law wisely permits the father to consult the genius, capacity and inclination of his son, and if he thinks it best that his child should be stimulated to industry by receiving the fruit of his own labor or best that he should before twenty-one be put upon his own resources to earn a living, he may by law anticipate the usual period of majority and release to him all claim upon his earnings.

The father by statute, with the minor's consent, may bind his son as an apprentice to learn a useful trade, thus transferring to the master the right of service. And in such case the

practice is to give to the minor child the whole benefit of his
labor, either in instruction or in board and clothing, and if a
sum of money is to be paid at the end of the apprenticeship
by the master it is usual and we suppose universal to stipula'e
for its payment to the son himself and not to the father.
Chamberlin's Commercial Law, 377, 846. Now by such indentures of apprenticeship the father relinquishes to the son the
benefit of the son's service, and the father's creditors may be
affected by it as much as the creditors of Mr. Atwood are
affected by the emancipation in the case before us. But we
think the law does not permit creditors to control the father's
freedom in the important matter of dealing with his son's
time and employment as the best interest of his son may
seem to require. By the law of nature every person is entitled to the fruit of his own labor and skill. Municipal law,
which gives to the father the earnings of his children during
their minority, does not intend to contravene this law of
nature, but merely to modify it, giving to the father the control of his children's earnings as the means of providing for
their maintainance and education, under the idea that the
father is more capable than the child to direct his industry
and supply his wants, and under the further idea that the
parent will use his power with paternal regard for the best
interests of his child, and not as a mere means of profit to
himself. Hence, it is settled law that if the father abandons
the child and leaves him to provide for himself, the child
becomes entitled to his earnings as a means of support, and
the father has no claim upon them to reimburse himself for past
expenses incurred in infancy. *Nightingale* v. *Withington*, 15
Mass., 272. So too by marrying during minority a daughter
is freed from all legal obligation to labor for her father.

If therefore by mutual consent a child is emancipated before
arriving at the age of twenty-one, and is left to provide for
himself under an agreement that his time shall be his own,
we think the father's creditors have no ground to complain of
the arrangement. The father relinquishes nothing which was
intended as a source of profit to him, he merely remits his son
to his natural rights at an earlier period than that fixed by

law. If however such arrangement is merely colorable—a mere sham to protect the son's wages from creditors, while as between the parties the father still is to control and have the benefit of them, then the transaction is void as against creditors. So too after wages are actually earned before emancipation, the gift of such wages or their proceeds to the son would be subject to the ordinary rules which govern voluntary conveyances of property. Probably Judge Reeve had such a case in his mind when he penned the sentence in his valuable treatise on domestic relations on which the defendants rely. The case before us relates to wages earned by the son after he had been emancipated, after he had reason to suppose that he was laboring for himself under an arrangement which appears to have been proper under the circumstances and made in good faith.

The father was shiftless and unable to pay his debts. Such instances are unfortunately too common, where the head of the family fails to provide comfortably for the household and is discouraged by the burden of debt from attempting much to improve his own condition or that of his family. In this state of things a son seventeen years of age proposes to start for himself and with his own earnings to provide his own food, raiment and education. The father consents, and the son by the labor of his own hands earns a few dollars, and we are called on to decide between the son's title and that of his father's creditors to these earnings. In a case somewhat analagous, of the wife's earnings, which at common law belong to the husband, our statutes have carefully protected the proceeds of her labor from her husband's creditors and secured them to her own use. These statutes proceed upon the same principle of natural law and justice which we feel bound to apply to a child's wages, in cases like the present. Those statutes however go much further in the protection of the wife's earnings than we are called on to go in favor of a child's, for as already stated the son's wages earned before emancipation are regarded as his father's property, and of course like other property are liable to attachment.

We have carefully examined the authorities cited by the

counsel for the defendants, but we find no case which favors their claim, and though perhaps no case has gone the full length claimed by the plaintiff, yet the language of the judges in Massachusetts, Vermont and Pennsylvania is in conformity with the views which we have expressed; and both on principle and authority we think the decision of the Court of Common Pleas was correct, and we therefore advise no new trial.

In this opinion, the other judges concurred.