In Equity.

GEORGE T. MERRILL, Trustee, *vs.* JOHN W. HUSSEY et als.

Penobscot.    Opinion July 10, 1906.

*Minors.    Wages Earned by Minor.    Such Wages Not Property of Parent, When.*
*Future Earnings of Minors Not Assets of Father's Estate.    Claim of Minors*
*Against Bankrupt Parent Valid.    Conveyance of Real Estate by Bankrupt*
*Parent Four Months Before Bankruptcy Valid to Extent of Minors'*
*Claims.    Voluntary Gift.    Trust.*

1.  If a father permits his son to make his own contracts of hiring and to receive his own wages, with the understanding that the son is to retain them as his own, the wages earned under such a contract become the property of the son, and not of the father.
2.  Future earnings of minor children are not assets of the father's estate to which creditors have any right to look, so as to prevent their relinquishment by the father, though insolvent, to the children, if he so wills.
3.  A father took money belonging to his two minor sons, without their consent, and used it in making partial payments of the purchase price of a farm, the title to which he took in his own name. He gave his own notes for the balance of the price, but paid no money of his own. He subsequently sold his interest in this farm for more than the amount of the sons' money paid in. He purchased another farm and paid in $450 of the money received on sale of the first, and had the title conveyed to his wife and one

son, then of age, with the consent of the other son, still a minor: *Held:* that a resulting trust did not arise for the benefit of the sons in the first farm, but that the sons had a valid claim against the father for the amount of money so taken. And when the conveyance was made to the wife and son in recognition and settlement of the claims of the sons, as the court finds was done in this case, such conveyance made more than four months before proceedings in bankruptcy were instituted against the father was valid against the trustee in bankruptcy of the father's estate, to the extent of the sons' claims against the father. But the surplus of the money received for the sale of the first farm, and paid into the second, must be regarded, as to creditors, as a voluntary gift or transfer, pro tanto, which creditors may reach. And for this surplus, the wife and son should be adjudged to hold the second farm in trust for the trustee in bankruptcy. The court finds that the surplus amounted to $112.95 and interest from November 10, 1903. The defendants may discharge the trust by the payment of this amount to the plaintiff within such reasonable time as may be fixed by a sitting Justice below. If the defendants fail to pay within such time, a master will be appointed to make sale of the second farm, subject to mortgage. As Charles Hussey, the minor son, has paid part of the mortgage indebtedness it is equitable that he first be recompensed for such payment and interest out of the proceeds of the sale. After payment to him of such sum as the court shall find to be due, such proportion of the remaining proceeds will be paid to the plaintiff as $112.95 with accrued interest bears to $450.00 and the balance to the defendants Nettie and Bertram Hussey.

In equity. On report. Bill sustained. Decree according to opinion.

Bill in equity brought by the plaintiff as trustee in bankruptcy of the estate of John W. Hussey of Milo, against the said John W. Hussey, Nettie Hussey, wife, and Bertram Hussey, son, of said John W. Hussey, attacking the title of said Nettie Hussey and Bertram Hussey in certain real estate in Milo, on the alleged ground that said John W. Hussey, while insolvent, purchased the property and paid the consideration, but caused the title to be conveyed to his said wife and son in fraud of his creditors.

Heard before the Justice of the first instance on bill, answer and proof. At the conclusion of the evidence, it was agreed that the case should be reported to the Law Court for determination and it was so reported.

All the material facts sufficiently appear in the opinion.

*Bertram L. Smith,* for plaintiff.

*W. A. Johnson,* for defendants.

SITTING: WISWELL, C. J., STROUT, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

SAVAGE, J.   In this proceeding, the plaintiff, as trustee in bankruptcy of the estate of John W. Hussey, attacks the title of Nettie Hussey, wife, and Bertram Hussey, son, of John W. Hussey, in certain real estate in Milo, on the alleged ground that John W. Hussey, while insolvent, purchased the property and paid the consideration, but caused the title to be conveyed to his wife and son in fraud of his creditors.

It appears that in 1901, John W. Hussey purchased a farm in Mt. Chase for $900.   He paid $100 down in cash, and gave his notes, secured by mortgage, for the balance.   The notes were payable $100, each succeeding year, with interest.   In 1902 he paid the first note and the interest.   In 1903 he paid the second note, but not the interest.   In October, 1903, he sold the equity of redemption in the Mt. Chase farm, and received about $500 in cash.   Of this, he paid $450 towards the purchase price of the Milo place, but the deed was made to his wife and his son, Bertram.   John W. Hussey was then insolvent.   It is claimed, and not disputed, that substantially all of the money which first and last was paid towards the Mt. Chase farm was the earnings of his two minor sons, Bertram and Charles, who were, at the time of the purchase, respectively about 19 and 17 years of age.   It is claimed by the defendants that this money was the property of the minor sons, and not of the father.   This is denied by the plaintiff.   And here arises the first question for determination.

The evidence shows that these minors, though not emancipated in terms, and, though still making their home under the parental roof, made their own contracts for the services by which the money was earned, with the knowledge and consent of their father, and received their own wages, and that they had been permitted so to do from the time they first were old enough to work out.   In this instance, they brought their wages home and put it in a wallet which belonged to one of them.   The wallet they left in the custody of their mother, who seems to have been authorized by them to take money from it

when needed for family expenses. The money which was paid for the Mt. Chase farm was taken for that purpose by the father from this wallet, with the permission of the mother, but without the knowledge or previous consent of the sons. Under these circumstances, whose money was it?

The general rule is that the father, whose duty it is to support his minor son, is entitled to his wages. But the father may relinquish this right. He does so when he emancipates him. And it scarcely needs the citation of authorities to show that when emancipated, the minor son may receive and hold his own wages, not only as against the father himself, but as against the father's creditors. It is well settled that future earnings of minor children are not assets of the father's estate to which creditors have any right to look, so as to prevent their relinquishment by the father, though insolvent, to the children, if he so wills. Such relinquishment is not fraudulent as to creditors of the father. *Lord* v. *Poor*, 23 Maine 569; *Atwood* v. *Holcomb*, 39 Conn. 270; *Johnson* v. *Silsbee*, 49 N. H. 543; *Schuster* v. *Bauman Jewelry Co.*, 23 Am. St. Rep. 327; *Beaver* v. *Bare*, 104 Pa. St. 58; 49 Am. Rep. 567; *Penn* v. *Whitehead*, 17 Grat. 503; 94 Am. Dec. 478, and many other cases. In this case there seems to have been no general emancipation from custody and control and the right to receive wages. But the father permitted his minor sons to make their own contracts for services, and to receive their own wages, and, we think, with the intention that they should hold them as their own. It is settled law in this state, that a minor may acquire and hold property in his own name, as when the property is the fruit of the minor's earnings, if it be obtained with the consent of the father that it shall belong to the minor. *Boobier* v. *Boobier*, 39 Maine, 406. A minor, with the consent of his father, may go out to service and receive and hold his own earnings. *Boynton* v. *Clay*, 58 Maine, 236.

And such is the law elsewhere. In *Whiting* v. *Earle*, 3 Pick. 201, the court, speaking of a transfer by a father to his minor son of the right to receive his own wages, said: "We go so far as to say that where a minor son makes a contract for his services on his own account, and the father knows of it and makes no objection, there is

an implied assent that the son shall have his earnings." This is quoted with approval by this court in *Boynton v. Clay,* supra. In *Manchester* v. *Smith,* 12 Pick. 113, the court by Chief Justice Shaw, after stating the general principle that a father is entitled to his minor son's earnings, unless he has been emancipated, added : "But if the son does in fact act and make contracts for himself with the knowledge of the father, this is evidence of his consent to permit his son to contract for his own employment and take his own earnings ; and when such consent has been given, neither the father himself, nor his creditors, can interpose, after the wages in such an employment have been earned, to take the amount from the son," citing *Jenney* v. *Alden,* 12 Mass. 375. See also *Atwood* v. *Holcomb,* 39 Conn. 270 ; *Armstrong* v. *McDonald,* 10 Barb. 300.

And without a general emancipation, the father may relinquish his right pro tanto, or in a particular instance. If he authorizes his minor son to go into a particular service and have his earnings, the son becomes to a certain extent independent, with power to act in his own right, and, having performed the services, with the right to recover the compensation, in his own name, to his own use. *Corey* v. *Corey,* 19 Pick. 29 ; *Tillotston* v. *McCrillis,* 11 Vt. 477 ; *Johnson* v. *Silsbee,* 49 N. H. 543 ; *Beaver* v. *Bare,* 104 Pa. St. 58 ; 49 Am. Rep. 567.

It should be noticed that this is not a case in which is involved the validity of a gift by the father of a claim for wages already earned by labor which his minor sons have performed without any previous understanding that the avails should go to the minor's own use ; nor a case where the arrangement between the father and sons was merely colorable, designed by the parties to cover the earnings of the sons for the father's use and benefit, and so in fraud of his creditors. *Johnson* v. *Silsbee,* supra.

In the light of the foregoing authorities, and of good reason, we have no hesitation in saying, upon the evidence submitted, that all the money which was paid towards the Mt. Chase farm was the property of the minor sons, Bertram and Charles, and not that of the father.

Hereupon the defendants say that by the transactions stated a

resulting trust arose in the Mt. Chase farm for the benefit of Bertram and Charles, to the full extent of the equity of redemption; that when that equity was sold the full proceeds equitably belonged to them, and that, by the investment of these proceeds in the Milo property by the trustee in the name of the wife and one of the sons, no fraud was, or could be, practiced upon the creditors. If the defendants' legal premise is sound, their conclusion naturally follows. On the other hand, if no trust arose, it is evident that the father, by taking their money as he did was guilty of a conversion for which they had a right of action; or if they chose to waive the tort, he was their debtor and they his creditors. In either event they had a valid claim against him. But, in such case, the proceeds of the sale of the Mt. Chase farm was the property of the father. If, then, the Milo property was paid for by these proceeds, but was deeded to the wife and one son, then of age, with the consent of the other son, yet a minor, in recognition and settlement of the claim of the sons, and the transaction was so accepted by the sons, the transaction was not in fraud of creditors, but constituted merely a preference by the father debtor of his creditor sons over his other creditors, which was valid at common law, and having occurred more than four months before his proceedings in bankruptcy were begun, was not invalidated thereby. The fact that the son who consented that his share representing his claim should be conveyed to his mother was still a minor does not concern the creditors or give them any greater rights.

It makes a difference, however, whether the sons be regarded as the beneficiaries of a resulting trust in the Mt. Chase farm, or simply as creditors of their father. On the one hand, if there was a resulting trust by reason of the fact that some or all of the consideration paid was their money, they had an equitable title to the farm, subject to the mortgage, and the profit made by selling the farm for more than was paid for it would belong equitably to them in proportion to their interest. On the other hand, if they were creditors merely, they were entitled at most only to the repayment of the money taken, with interest. And any sum in excess of that amount that came to them or was paid in for the Milo property would be

pro tanto a voluntary transfer on the part of the father, which his creditors could reach in equity. The same result would follow if the money of the sons should be regarded as impressed by a constructive trust in the father's hands, and so followed into the Milo property. *Bresnihan* v. *Sheehan,* 125 Mass. 11.

We think the case does not show a resulting trust. A resulting trust arises by implication of law where the purchase money is paid by one person out of his own money, and the land is conveyed to another. *Herlihy* v. *Coney,* 99 Maine, 469. It rests upon the supposed intention of the person paying, a supposition which is rebuttable. *Baker* v. *Vining,* 30 Maine, 121; *Perry* v. *Perry,* 65 Maine, 399. See implied trusts, Am. & Eng. Ency. of Law, Vol. 15, p. 1136. It arises because the payer is virtually and equitably the purchaser. The payer must "pay," or "furnish," or "advance" the consideration. These various expressions, used interchangeably in the cases, all imply that the payer does something, and that he has the intention in so doing, to acquire at least an equitable interest in the land. The payment by the cestui must have been made for the conveyance of the title. 15 Am. & Eng. Ency. of Law, 1143. In this case the father was the real purchaser. The sons had no intention to pay the consideration out of their own money, for they knew nothing about the payment at the time. They did not pay the money or furnish it. There was no act on their part. Their father took the money without their knowledge or consent. Under such circumstances a resulting trust does not arise, though it may be that a constructive trust might, of which later. Moreover, two of the payments relied upon were made upon the father's notes which were given in part consideration of the purchase. If, after an estate has been conveyed on the credit of the grantee, in whole or in part, a third person makes the deferred payments, a resulting trust will not thereby arise in his favor. The payment must be a part of the original transaction. *Buck* v. *Pike,* 11 Maine, 9; *Farnham* v. *Clements,* 51 Maine, 426; *Gerry* v. *Stimson,* 60 Maine, 186.

We do not need to inquire whether a constructive trust, or a trust ex maleficio, arose from the unauthorized conversion by the father of the money of his sons. Whatever might be the precise legal status

of the money, it is evident that the sons had a valid claim against the father for the amount of their money taken by him, and interest, and we think the evidence shows that the sons assented to the conveyance of the Milo property to their mother and one of them, as a settlement of their claim. If the father in causing the conveyance to be so made, designed also to hinder, delay or defraud his other creditors, it is not made to appear that the mother and sons participated in the fraudulent intent. The sons apparently claimed all the proceeds of the Mt. Chase farm which went into the Milo property to be theirs. But we think that they were entitled only to the amount of their money which was taken by the father, with interest, and the surplus, which was paid into the Milo property, as against the father's creditors, must be regarded as a voluntary transfer or gift, pro tanto, which his creditors may reach.

At the time of the transfer, Nov. 10, 1903, the father paid in $450. The valid claims of the sons then amounted to $337.05, as we compute them. The gift then was $112.95. And as the wife and son have had all the rents and profits of the place, interest on the amount of the gift may be charged.

The plaintiff is entitled to appropriate relief, though not to the specific mode of relief prayed for. The bill will be sustained with costs. The defendants Nettie and Bertram Hussey will be adjudged to hold the Milo property in trust for the plaintiff, as trustee in bankruptcy, for the sum of $112.95 and interest from November 10, 1903, to the time of final payment. The defendants are entitled to discharge the trust by paying this amount to the plaintiff. If they fail to do so within such reasonable time as may be fixed by a single Justice below, a master will be appointed to make sale of the Milo property, subject to mortgage. As Charles Hussey has paid a part of the mortgage indebtedness, it is equitable that he first be recompensed for such payment and interest out of the proceeds. After the payment to him of such sum as the court shall adjudge to be due, such proportion of the remaining proceeds will be paid to the plaintiff as $112.95 with accrued interest, bears to $450, and the balance to the defendants Nettie and Bertram Hussey.

*Decree below accordingly.*