# CHARLESTON.

## HALLIDAY v. MILLER.

Submitted January 21, 1887.—Decided February 12, 1887.

1. PARENT AND CHILD—EARNINGS OF CHILD—CONSIDERATION FOR A DEED.

The earnings of a minor child, who has not been emancipated by his father, while laboring for another with or without the approbation of the father belong to the father; and if received either directly or indirectly by the father, they do not constitute a valuable consideration for a deed by the father to the child.    (p. 431.)

2. PARENT AND CHILD—WAR-BOUNTY—PAY OF SOLDIER.

But a bounty paid by the United States Government or by a State, city or county to a minor citizen of the United States upon his enlisting in the military service of the United States during a war as well as his pay as a soldier belong to the minor, not to his father; and if such bounty and pay are received by the father from the son, they constitute a debt due from the father, unless they are intended as a gift to the father by the son; and the father may satisfy such debt by a conveyance of land to the son; and such conveyance should be regarded as made for a valuable consideration and not as voluntary.    (p. 437.)

Statement of the case by GREEN, JUDGE:

This was a bill filed at May rules, 1880, by John T. Halliday against George S. Miller and Bartley F. Miller to set aside as voluntary and fraudulent two deeds executed by George S. Miller to his son Bartley F. Miller conveying to him two parcels of land.    The first deed was dated October 25, 1870, acknowledged December 16, 1872, and recorded November 24, 1873, and on its face it professed in consideration of $400.00 cash, to convey a specified part of a certain tract of land of five hundred acres in Jackson county owned by George Miller.    The other deed was dated, acknowledged and recorded November 26, 1876.    The consideration named in this deed was $800.00 cash, and it conveyed the residue of said tract of five hundred acres.    The bill stated, that upon a settlement of accounts with the firm of Halliday & Miles, consisting of the plaintiff and W. T. Miles, on closing their business in Gallipolis, Ohio, George S. Miller

& Co., a firm doing business in Jackson county, West Virginia, was found to be indebted to them in the sum of $1,800.00 ; and in settlement of this indebtedness George S. Miller executed his note to Halliday & Miles for that amount dated April 10, 1872, and payable thirty days after its date ; that on January 1, 1879, the plaintiff became the sole owner of this note by buying the interest of said Miles;—that a deed of trust was given by George S. Miller on a tract of land to secure the note;—that in April, 1879, this deed of trust was foreclosed, and the land sold for $1,000.00 ;—that this sum less the cost of sale and the cost of making the deed to the purchaser is a proper credit on the said note as of the date of said sale;—that nothing else has ever been paid on said note ;—that George S. Miller was solvent, when he gave the note in 1872, owning then a valuable tract of five hundred acres of land in Jackson county; the tract above referred to, which was conveyed to him by one Fisher and wife on October 20, 1850, a copy of their deed being filed with the bill ;—that the consideration named in the deed was $1,100.00 ;—that with the fraudulent purpose of defeating the plaintiff in the collection of his said debt George S. Miller without any legal or valuable consideration did convey to his said son the whole of said five hundred acres of land by the two deeds above described;—and that excluding this land George S. Miller has no property real or personal. The prayer of the bill is, that the plaintiff's said debt with interest be decreed him;—that said conveyance to Bartley F. Miller be set aside, annulled and held for naught and be sold for the payment of the plaintiff's claim.

W. T. Miles was afterwards made a defendant and answered the bill admitting, that John T. Halliday owned the said note, he, Miles, having no interest in it. The other defendants demurred to the bill ; and their demurrer was overruled ; and they filed their answer, in which they admit the giving by George F. Miller of the note for $1,800.00 and the securing of it by a deed of trust, and they allege, that the plaintiff was the only bidder at the sale under the deed of trust, and that the tract of land named in it sold for only $1,000.00, when it was then worth $3,000.00. But there is no relief asked because of the inadequacy of the price; and

54

the answer asking no affirmative relief is not in the nature of a cross-bill. The defendants further admit the making of the two deeds aforesaid by Miller to his son but say, that these deeds were not made with any fraudulent purpose, but that the transaction was fair and *bona fide* and the deeds were made for a valuable and legal consideration, and for the purpose of paying just debts due to the defendant, B. F. Miller, from his co-defendant, G. S. Miller, which debts they say were contracted in the following manner :—

" In the year 1861 defendant, Bartley F. Miller, enlisted in the United States army and continued as a soldier in the same until the termination of the rebellion ; that during that time he gathered and saved a large amount of money, and that in the year 1863 he verbally contracted with his co-defendant, G. S. Miller, for the tract of land mentioned and described in plaintiff's Exhibit ' B ' for and at the price of $425.00, at which last mentioned time he paid his said co-defendant the whole of the purchase money, to wit, $300.00, in cash and one horse at the price of $125.00, which amount these defendants allege was a full and adequate price for the same. Defendants further say that in the year 1866 defendant, Bartley F. Miller, took possession of said last mentioned tract of land under said purchase and has remained in possession of the same and paid the taxes assessed thereon ever since that time, but that no conveyance thereof by deed was made until the 16th day of December, 1872, as shown by plaintiff's Exhibit 'B,' to which your Honor is referred by these defendants for evidence of defendant Bartley F. Miller's title to said land. Defendants further allege, that in the year 1865 defendant, Bartley F. Miller, loaned to his co-defendant the sum of $600.00, for which it was verbally agreed between them at the time of said loan was made, that if the said $600.00 should not be paid to defendant, Bartley F. Miller, when required by him, that then defendant, George S. Miller, should convey to him the tract of land mentioned and described in plaintiff's Exhibit 'C ;' and that defendant, Bartley F. Miller, did require the payment thereof, and that defendant, Geo. S. Miller, not being able to pay the same, which, when required, amounted together with its interest to the sum of $800.00, executed on the 27th day of November,

1876, a deed conveying said land to said defendant, Bartley F. Miller, in accordance with said agreement, and that he has had possession of said land and paid taxes thereon ever since said conveyance, a copy of which deed is filed with plaintiff's bill, marked Exhibit 'C,' to which your Honor is referred for evidence of Bartley F. Miller's title to the land therein conveyed."

The defendants further allege, that this sum of $800.00 is more than the full value of this last named parcel of land. They do not deny the insolvency of the defendant, G. S. Miller, as alleged in the bill.

Numerous depositions were taken to sustain the allegations of the bill and of the answer, so far as they denied the allegations of the bill. Many depositions were taken to show the value of the tract of land sold under the deed of trust and purchased by the plaintiff for $1,000.00 as aforesaid; but regarding these last as irrelevant I shall take no further notice of them. The evidence taken altogether, though the witnesses do not agree, seems to me to prove, that the consideration named in the two deeds was the fair value of the two parcels of land, being $1,200.00 for a tract for which G. S. Miller in 1850 paid $1,100.00. The real question of the fact in controversy was, whether the money, which, the defendants, Miller and his son, state in their answer, was the consideration of the two deeds aforesaid, was not received by Miller from his son, while he was under twenty one years of age, to which he was entitled as his father. These two defendants both admit in their depositions, that it was money received by B. F. Miller as his pay as a common soldier in the army of the United States during the late war with the Confederates States and bounties for volunteering in said army. He first enlisted for three years on November 24, 1861, according to the father's deposition but according to his own testimony in the spring of 1861, for which he received a bounty of $100.00. His pay at $13.00 a month for three years amounted to $468.00. At the expiration of three years he re-enlisted, receiving a bounty of $300.00; and for the eight months he served under this enlistment he received $16.00 a month or $128.00. The whole amount of bounties and pay received by him was $996.00. This with the inter-

est thereon, it is claimed by both these defendants, was the sole fund, with which the son purchased this land of his father. It is admitted, that he had no other money, wherewith to make the purchase. But it is stated in the deposition of the father, that all this money was earned by his son, after he was twenty one years of age, and therefore belonged to him. The plaintiff endeavored to prove, that all this money was earned by B. F. Miller, while he was an infant under twenty one years of age, and that his father received it all, as he had a right to as his father; and that years afterwards, when the father became insolvent, he made these conveyances and now sets up the pretence, that it was for a debt he owed his son. The plaintiff to sustain this position proved by one witness, who was a soldier in the same company and enlisted about the same time, that B. F. Miller had the appearance of being not over eighteen years of age. Another soldier in the same company testified, that he would have taken Miller to be about nineteen years old in November, 1861. But the strongest proof on this point on the part of the plaintiff is the deposition of the clerk of the County Court of Jackson county and an attested copy of the records in said county made when the marriage license of B. F. Miller was issued on the 11th of September, 1867, from which it appears, that he gave his age at that time as twenty three years. According to this he must have been about seventeen years old, when he enlisted in 1861, and all his service as a soldier must have been rendered before he was twenty one years of age. On this subject G. S. Miller in his deposition taken on January 22, 1882, says:

"My son Bartley, if I mistake not, was thirty nine years old last September. I think he was born in 1841 or 1842. I can't be positive. The date of his birth is recorded in the Bible at home. He joined the army the 23d day of November, 1861, which is also recorded in the family Bible. He received at that time a bounty of $100.00. My understanding is that he was in the army three years and eight months; he was discharged in 1865. He was in company F, I believe, of the 8th W. Va. cavalry, afterwards called the 7th. Jno. W. Wolf, Wiley Garrett, Harvey Garrett, Noah Corner, Wiley Berry, and, I think, Robert Dawson, neighbors. were

in the same company with him.   They are all living in this county except Wiley Berry and Robert Dawson, who live in Kanawha county, this State."

B. F. Miller in his deposition taken on the 1st day of June, 1882, on this subject says :—" I am thirty eight years old—I don't believe I can exactly tell you when I was born. I am married.—I have been married ten years.—I' was never married but once. "   It was proven, that he was very saving ; and that his father during the war received much of his pay as a soldier ; it having been sent home to him by the son.

The plaintiff, when the deposition of G. S. Miller was being taken, requested the officer to keep open said deposition, till the Bible should be produced in which said Miller stated, that the date of the birth of his son was recorded, and requested said officer to issue a *subpœna duces tecum* requiring said Miller to produce said Bible ; but the officer closed the deposition then without the production of the Bible.

The following final decree was entered in the cause on the 14th day of August, 1882 :

" This cause came on this day to be finally heard, upon the summons returned duly served on the defendants, upon the bill and exhibits therewith filed and the proceedings regularly had thereon at the rules, the petition of Wm. Y. Miles, and the joint and several answer of the defendants, G. S. and Bartley Miller, and the depositions therein filed, and was argued by counsel, by both the plaintiff and the defendants.   Whereupon the court is of opinion that the plaintiff is not entitled to the relief prayed for in said bill.   It is therefore adjudged, ordered and decreed, that the said plaintiff, Jno. T. Halliday, take nothing by his said bill, and that the same be dismissed, and that the defendants do recover from the said plaintiff, John T. Halliday, their costs in and about their defence in this suit expended, including an attorney's fee of $15.00, and execution may be issued therefor when directed by the defendants Millers, or either of them, and this cause being ended and determined, is ordered to be stricken from the docket."

From this decree the plaintiff has obtained an appeal and *supersedeas.*

*W. H. Harvey* for appellant.

*V. S. Armstrong* for appellee.

GREEN, JUDGE :

Upon the question of fact, which has been raised in this case, whether the defendant B. F. Miller was a minor, when he served in the army of the United States, I think, there can be no reasonable doubt. He himself in his deposition taken on the 1st of June, 1882, states, that he was then thirty eight years old. He must therefore have been less than seventeen in the spring of 1861, when, he says, he enlisted, and the whole of his military service was rendered, while he was a minor. This is further proved by his own statement of his age, made when he obtained his marriage-license. This evidence greatly outweighs that of his father, the only witness, who says he was of full age, when he enlisted. He states, that his son did not enlist till the 23d of November, 1861, six months later than the date of enlistment stated by his son. He says, his son was born in September, 1841 or 1842, which would make him a little over twenty or twenty one in November, 1861, when he says his son enlisted. I have no doubt, the statement of the father was false, and that he knew it to be false. He says, that the date of his son's birth and of his enlistment are recorded in the family Bible. If so, by producing the Bible he could have proved the age of his son beyond dispute ; but though requested he refused to produce it. I shall therefore consider the case, as though it was proven, that all the military service of the son was rendered, while he was a minor.'

An effort was made to show, that the reputation of the father for veracity was such, that he ought not to be believed on oath ; but the effort failed. The record in the case however shows, that his evidence is entitled to very little consideration, and when unsupported by other evidence, it ought to be disregarded. He not only made a false statement in reference to the age of his son, but many of his other statements are unworthy of belief and should be diregarded. His statement, for instance, that his son bought the first piece of

land, for which he made him a deed on October 25, 1870, in the year 1863, ought not to be believed. This parcel of land contained 162 acres, all in woods. Why his infant son serving in the army should buy such a piece of land and pay for it cash $425.00 can not be easily explained. This statement is not corroborated by the son. He testifies, that he bought this land in 1870 and paid $425.00 for it. The deed bears date October 25, 1870. He was married in September, 1867, and it is much more probable, that he bought the land in 1870 after his marriage, and after a house had been built on it, in which he was living, than in 1863, when he was a boy in the army. The statement of the father, that he did not give his son a deed for this land for so many years through carelesness, and because he was waiting for a lawyer does not satisfactorily account for the long delay. The fair inference from all the evidence is, that the father having received all or nearly all of the bounties and pay as a soldier of his infant son and being involved in debt, years afterwards conveyed to his son this land as a compensation for said money. The evidence shows, that the land, at the time it was conveyed to the son, was not worth more than the money given by him to his father with the interest thereon up to that time.

It is insisted, that the son being a minor, when this money was earned by him, it all belonged to his father, and when he received it from his son, he received it as his father and as the person entitled to it; and the subsequent conveyance of this land without any consideration other than this money, when he was insolvent, must be regarded as voluntary and fraudulent as against the plaintiff at least, a creditor, when these voluntary deeds were made. It would seem to be almost universally admitted, that the father is entitled to the value of his minor child's labor and service. (*Day* v. *Everett*, 7 Mass. 145; *Plumber* v. *Webb*, 4 Mason 350; *Gale* v. *Parrott*, 1 N. H. 28.) None have ever disputed, that this absolute right of the father to the child's labor extends till the child is fourteen years old. But the authorities very generally and, it seems to me, justly extend this right of the father through the whole minority of the child, that is, till he reaches the age of twenty one, when the child is legally emancipated from the father's control. This seems to me

but reasonable, as thereby the law sets off some years, when the child may be useful, against many preceding years, when he is entirely helpless and a charge upon the father. This right of the father to his minor child's services is well illustrated by the following cases, which bear more or less resemblance to the case before us :

In *Monaghan* v. *School District*, 28 Wis. 104, Cole, Judge, says : " Is there any difficulty in the way of the father maintaining this action ? The daughter was employed by the officers of the district to teach a district-school. A written contract was entered into, by which it was agreed, she should teach the school for four months and should be paid twenty five dollars a month for her services   The father was present when the contract was entered into and assented to his daughter entering into it. The contract has been performed on her part. But it is claimed, that by the school-laws a minor is competent to contract as a school teacher, and therefore such contract may be enforced by the minor the same as by an adult. It is conceded, that the parent has the right to prevent his minor child from teaching, but assenting to her teaching he, it is argued, must be held to the assent to the contracting with all its legal consequences. This is the argument. Is it satisfactory ? Does it follow, that, because the parent assented to this employment, he emancipated the child and relinquished his claim to her wages ?  *  *  *  It appears, that the daughter is about sixteen years of age, and the father was charged with certain duties in respect to her, as education, support and protection. And as some compensation for these duties he has a right to claim her earnings, and there is no substantial objection to his maintaining this action. We are quite clear, that the recovery will bar any further action by the minor."

In the case of *White* v. *Henry*, 25 Me. 531, it was decided, that a minor was not emancipated by a marriage without the father's consent; and the son having so married and gone to sea being employed by one, who knew, he was a minor but married, the father can recover from such employer the wages earned by such son. The court say :—" The father has in no way consented he should have his earnings, but has always been ready and willing to support him. The de-

fendants knowing he was a minor, without the knowledge
or consent of the father employed him and have paid him
his wages in full.   To allow the defence would hold out en-
couragement to sons impatient of parental control to resist
the reasonable authority of their fathers and give the latter
little means to secure their own legal rights beyond physi-
cal restraint."   The plaintiff was given judgment against
the defendants for three months and twenty days' wages at
the rate of $14.00 per month and interest.

In *Week* v. *Holmes et al.*, 12 Cush. (Mass.) 215 where a minor
shipped on a whaling-voyage without his father's consent, it
was held, the father could recover of the employer the fair
share or lay, as it is called, of the voyage, that is, one *per
cent.* of the earnings of the voyage.   In *Bishop* v. *Shepherd*,
25 Pick. 492, it was decided, that, where a minor shipped as
a seaman in a whale-ship without his father's consent and
deserted in the course of the voyage, whereby his share of
earnings according to the custom in such cases was forfeited
and enured to the benefit of the ship-owner, the father could
sue the ship-owner for the value of his son's services and
earnings, upon an implied contract, if he repudiated the con-
tract of the son, as he had a right to do.   The services due
in this case were for three years.

If the Wisconsin decision be sound law, and, it seems to
me, it is, then it would be unimportant in cases like those
cited above from the Maine and Massachusetts Reports,
whether, when the son shipped as a seaman being a minor,
he did so with or without his father's consent.   In either
case the father could recover the son's wages under the con-
tract for the voyage.   The only difference is, that, if the mi-
nor son shipped as a seaman without his father's consent,
the father could repudiate the son's contract and recover for
the value of his son's services without regard to the contract.
But if the son shipped with the father's consent, the father
could recover only such pay, as under the contract the son,
if he were of age, could recover.   But it is universally
agreed, that the father may voluntarily relinquish his child's
earnings, though he be a minor, and allow him to earn for
himself and receive and appropriate his own earnings at his
pleasure.   Such an arrangement between a father and his

minor son is called an emancipation of the son. By such agreement the son is put as to his services on the same footing, as if he had attained the age of twenty one years, when the law would emancipate him. Such emancipation by the father may be parol or in writing; and it may be proved by circumstantial evidence, or it may be implied. There are some cases, which seem to proceed on the idea, that an emancipation may arise without the father's agreement as the result of his failure to perform his obligations as a father or his inability to do so. But it does seem to me, this is not a correct principle. (See Woods, Judge, in *Jenness* v. *Emerson*, 15 N. H. 489). But the right of a father to emancipate his minor son is unquestionable; and this right exists, though the father be insolvent. (*Campbell* v. *Cooper*, 34 N. H. 49; *Cloud* v. *Hamilton*, 11 Humph. 104; *Armstrong* v. *McDonald*, 10 Barb. 300; *Atwood* v. *Holcomb*, 39 Conn. 270; *Irickman* v. *Wood*, 25 Cal. 147; *McClaskey* v. *Cyphert*, 27 Pa. St. 225: *Dersker* v. *Hess*, 54 Mo. 250; *Hall* v. *Hall*, 44 N. H. 293; *Chase* v. *Elkins*, 2 Vt. 290; *Winchester* v. *Reed*, 8 Jones L. 377).

There are two decisions, which I have seen, in which the facts resemble the case before us, but which differ from each other because of a diversity in the facts of the two cases. Both the decisions seem to be correct; and a statement of the character of these two cases and careful observation of the diversity between them, which led to opposite decisions, will, I think, aid us in reaching a correct conclusion in this case.

The first of these cases is *Winchester* v. *Reed*, 8 Jones' L. 377. In this case the minor son had worked in a gold mine for some two or three years at from seventy five cents to a dollar *per* day and he had no other property but these earnings, which at the time he became twenty or twenty one years old amounted to a considerable sum. The father being at that time insolvent made a deed to his son for a tract of land worth $300.00 or $400.00, for which the son paid him down in cash $250.00 and his note for $50.00, the residue of the purchase-money. Pearson, Chief Justice, delivering the opinion of the court upon the question, whether or not the deed was fraudulent, says:

" A father is entitled to the services of his son, till he arrives at the age of twenty one. (*Musgrove* v. *Kornegay*, 7 Jones 71.) It is true, a creditor can not make his debtor work to pay his debt, nor can he force him to make his children work, or sell under execution the valuable interest, which a father has in the services of his child, or which a master has in the services of an apprentice. But, if in fact a child does work and earn wages, the proceeds of his labor belong to his father, and if the father invests the money so earned in the purchase of land taking the title in the name of the child, the father being insolvent, his creditors can subject the land to the payment of their debts. (*Worth* v. *York*, 13 Ired. 206.) Therefore when the son worked at the gold mine, his wages belonged to his father, and he was bound as an honest man to have taken the money and applied it to the payment of his debts instead of attempting under the color of this money, which was his own, to pass his land into the hands of his son. * * * * The deed is voluntary and void against creditors."

The appellant insists, that the case before us is substantially like the above ; and it is, unless there is a distinction between wages paid to a minor for working in a gold mine and bounties and pay for the military services of a minor in the army of his country. Whether this would make any difference, we shall presently see.

The other case, to which I refer, is *Jennett* v. *Alden*, 12 Mass. 385. The facts in this were as follows :—" When the son was about fourteen years old, his father told him, he might go to sea, and he, the father, would give him his time, or all that he should earn, till he should be twenty one years of age. The son accordingly went to sea and has followed that course of business ever since. The father at different times received the wages earned by his minor son. When the son was about nineteen years of age, the father caused to be executed to him a deed for eighteen acres of land, which the father bought and paid for, being then in good credit and not involved, though he owed one debt to one Church. No account was kept of the wages of the minor son received by the father before this deed was made, but it was believed to be equal to the value of the land when so conveyed to

the son, and it was intended as a compensation for the wages of the son so received from time to time before that by the father. The father afterwards became insolvent; and the court held, that this was not a voluntary conveyance to the son and was not fraudulent as to Church's debt, which was existing, when the deed was made to the son. Parker, Chief Justice, said :

" It appears, there was an equitable consideration subsisting between the father and the son, the former having received the earnings of the latter, an agreement having been entered into by the father, that the son should enjoy the fruits of his own labor, although not of age to be emancipated. The agreement was a lawful one ; and the money received by the father from the earnings of the son may be equitably considered the money of the son, which, if he could not obtain it by coercion, was yet a good and valuable consideration for any promise from the father and would fully justify the consideration in this deed, as paid by the son."

The facts in the above case resemble much the facts in the case before us except in the important particular, that in this case there is not the slightest evidence of an emancipation and no reason to believe, that before the earning of the pay and bounties for military services there was any agreement between the father and son, that the son should enjoy the fruits of his service in the army, though he was a minor. It is obvious, that but for the agreement made, before the wages were earned, the decision in the case above would have been different, and the deed to the son would have been declared voluntary and therefore fraudulent as to the existing creditors of the father. And such must be our decision on these authorities in this case, unless a distinction exists between wages earned by a minor while serving as a seaman in a private mercantile vessel, and pay and bounty earned by a minor while serving as a soldier in the army of his country. So that the determination of this case must depend upon whether there be such a distinction.

The father is clearly entitled to the wages of his infant son serving in a mercantile vessel owned by a private individual, except when he has before the wages have been earned,

agreed, that the son might have all the wages he so earned. But it does not follow that a father is entitled to all the pay and bounty received by his minor son, while serving in the army and navy of his country as a soldier with the father's consent, though the father never agreed with the son, before such services were rendered, that he should have either the pay or the bounty. If in such a case the father is not entitled to the pay and bounty, then the decision of the Circuit Court in this case, that the deeds from the father to the son were made for a valuable consideration and were therefore not fraudulent and void as to the father's creditors, must be sustained. Otherwise it must be reversed.

The oldest case on this subject, which I have seen, is an English case, *Carson* v. *Watts*, 3 Doug. 350. This was a suit brought to recover a minor's share of a prize taken by a privateer vessel during a war. It was brought by the administration of the minor sailor against the owners of the privateer, and the question involved was, whether the minor's share of the prize-money belonged to him or to his master. The minor during all the time, he served in the privateer, was an apprentice as a mariner, and his master received the wages due him for two voyages, the minor had made, and now claimed the prize-money, which was coming to this minor, his apprentice. The following were the opinions of the judges:

Willis, Justice,—" I think the master is entitled to all the wages or money freely acquired by the apprentice as for labor or service ; but to any extraordinary gains, he may acquire out of the usual course of his service, I think the master not entitled. Suppose in case of a wreck at sea an apprentice by any exertion of his own had recovered part of the wreck from a ship stranded, would the master be entitled ? "

Lord Mansfield,—" It is very extraordinary, that no case has occurred since 1747. I did think, it had been decided. Upon the first argument I thought it clear, that whatever an apprentice, who runs away, gains in another service, *es nomine* belongs to the master and is earned for him ; and if it is anything specific, the master may bring trover for it. I could see no distinction in the case of a privateer or letter

of marque between wages and prize-money, which is in lieu of wages. In men of war there is a difference. This is not like the case of extraordinary gain as the instance put of *treasure-trove*, recovery of wreck, &c.; for that is no remuneration for services. But I am now struck very much with the usage, and am unwilling to go against it. We must take the usage to be as stated by Mr. Wood." (This usage was, that the apprentice should have the prize-money and the master the wages,) " and I think it ought to decide. "

Buller, Justice,—" Independently of statutory regulations the prize-money was as much a bounty of the crown on board privateers as on board King's ships. There does not seem much difference in the case from that circumstance. I rather incline to the opinion, that the apprentice is entitled to the prize-money acquired."

The next oldest case, I have seen, is *United States* v. *Bainbridge*, 1 Mason 71, decided in 1816. Judge Story in the opinion in this case on page 84 :—" All the acts from the first establishment of the navy authorize the employment of midshipmen (who are invariably minors, when they enter the service) and all the acts since the statute of June 30, 1798, chap. 81, including those now in force, and under which the present applicant has been enlisted and held in service, in express terms authorizes the President to engage and employ boys in the ordinary duties of the navy. In no one of them is there any provision requiring the consent of parents or guardians to their engagement or authorizing them to make it. The laws manifestly contemplate, that it is a personal contract made by the infants themselves for their own benefit. They are entitled to the pay, the bounties and the prize-money earned and acquired in the service. * * * * To suppose, that the legislature meant to authorize an infant to enlist in the navy, yet the contract should be voidable at his election, would be to suppose, that it meant to repeal the rules and articles of the navy in his favor, and enable him to desert, when his services were most important to the public. "

In *Mears* v. *Beckford*, 55 Me., it was decided, that " Upon a contract made with his father's consent between a minor and the defendant to enlist as a substitute, the father

can not maintain an action in his own name. This bounty-money is a gift to the person enlisting and not wages; and it belongs to the minor and not to his father or master." The court says on page 529 :—" It has been held in *Banks* v. *Conant*, 14 Allen 497, that a bounty paid by the national government or by a State, city or town to a child or apprentice upon his enlisting in the military service of the United States belongs to him and not to his father or master."

In *Kelly* v. *Sproul*, 97 Mass. 169, it was decided, that bounty-money, to which a minor becomes entitled upon his enlistment as a soldier, belongs to him and not to his master; and that an agreement to give his military bounty to his master for permitting him to enlist was voidable by the apprentice on the ground of infancy. So too money paid to the minor for his enlisiment as a substitute is to be regarded in the nature of bounty-money and belongs to the minor. ( *Taylor* v. *Mechanics' Saving Bank*, 97 Mass. 345.) "

In the case in 14 Allen a distinction is taken between bounty-money, which is regarded as a gift by the government, and the regular pay of the soldier, which is regarded as pay for services rendered. It seems to me, that there is no well grounded distinction between the two. In time of war the government has a right to demand military services of its citizens whether adults or minors ; and it may compel the services of both minors and adults. It itself fixes the price it will pay for such services. It seems to me therefore, that this sovereign power of a government to require the military services of an infant citizen in time of war on what terms it pleases renders the regular pay as much a gift or bounty as what is paid to induce a citizen to volunteer. It is all to be regarded in the same light as bounties and not as pay for services. The sovereign power of the State supersedes the rights and powers of a father over his infant child in such a case. And as it may require the military services of the infant in a war without any compensation, so it may fix what his compensation shall be. And if the State fixes the bounty to be paid and the regular pay of the soldier and directs it to be paid to the soldier, who volunteers, whether a minor or an adult, no other person, in case the soldier be a minor, can claim such bounty or pay,

whether or not the minor has been emancipated by his father or master. The minor's right to receive such pay or bounty does not arise from his having obtained the consent of his father to receive it, but from the better reason, that his sovereign State has directed it to be paid to him personally.

I am therefore of opinion, that in this case Bentley F. Miller, though a minor, when he received his bounties and pay as a soldier, was entitled to retain them as his own; and his father having received such bounty and pay as a soldier thereby became indebted to his son, and as the amount of this indebtedness with interest exceeded the value of the land, which his father conveyed to him, such conveyances can not be regarded as voluntary and fraudulenl against the plaintiff, a creditor of the father. This case on this view of the law becomes very like the case of *Jennett* v. *Allen*, 12 Mass. 385; and the principles on which the deed to the son in that case was decided to be not fraudulent and void, must control in this case and require us to hold the two deeds from the father to the son as made for a valuable consideration and not fraudulent.

For these reasons the decree of the Circuit Court appealed from must be affirmed; and the appellees must recover of the appellant their costs in this Court expended and $30.00 damages.

AFFIRMED.