# CHARLESTON.

## GAPEN *v.* GAPEN.

Submitted September 10, 1895—Decided Dec. 4, 1895.

1. PARENT AND CHILD—MINOR'S RIGHTS—MILITARY SUBSTITUTE.
    Where one who is drafted pays money to a minor for taking his place as a soldier in the United States army, and the minor enters such military service by the consent of his father, such money belongs to the minor, and not to the father.

2. SPECIFIC PERFORMANCE—HEIRS OF *non compos* CONTRACTOR.
    The specific performance of an executory contract will not be decreed against the heirs of a party, who, when he made it, was of unsound mind.

3. STATUTE OF LIMITATIONS—EXPRESS TRUST.
    No statute of limitations runs against an express trust, nor does lapse of time avail, until the duties are ended, or the trust disavowed.

4. CHANCERY COMMISSIONER—REFERENCE TO COMMISSIONER.
    Where the evidence taken tends to show that defendant is entitled to certain credits on plaintiff's claim, and the cause is referred to a commissioner to take and state an account, he should be required to pass upon such items of credit.

    A case in which these principles are discussed and applied.

R. E. FAST and L. V. KECK for appellant.

R. E. FAST cited 10 W. Va. 200; 28 Ind. 295; 29 W. Va. 424, 439; 14 Allen, 497; 10 Am. & Eng. Enc. Law, 49, note; 39 Pa. St. 463.

R. L. BERKSHIRE and GEO. C. STURGESS for appellee.

HOLT, PRESIDENT:

On appeal from decrees entered by the Circuit Court of Monongalia county, the one on the 22d day of June, the

other on the 12th day of November, 1894, decreeing a sale of a tract of land.

Amos Gapen, of Monongalia county, the father, died intestate on the 5th day of February, 1892, leaving as his heirs at law his two sons, the defendant, Stephen Gapen, and the plaintiff, Joseph Gapen. Some time in the year 1864, Joseph Gapen, being then nineteen years old, enlisted as a soldier in the Federal army as a substitute for one who had been drafted in the state of Pennsylvania, and served until the end of the war, receiving and using his pay as a soldier during his term of enlistment. For entering the army as such substitute he received the sum of nine hundred dollars, of which sum eight hundred and eighty five dollars came into the hands of his father to take care of for him during his absence in the army.

On the 4th day of march, 1867, the father, Amos Gapen, bought of William S. Miller the undivided half of a tract of land of fifty seven and three-fourths acres on the east side of the Monongahela river in Monongalia county at the price of seven hundred dollars, and Miller and wife, by deed dated the 13th day of March, 1867, conveyed the land to Amos Gapen. Five hundred dollars of the purchase money was paid in hand. A note for two hundred dollars, the residue, was executed, and a lien was retained on the land to secure its payment. It was paid about the 4th day of March, 1868. By deed dated the 15th of November, 1870, P. L. Kramer and wife sold and conveyed to plaintiff, Joseph Gapen, the other undivided half of this fifty seven acre tract of land.

On the 27th day of December, 1879, Amos Gapen executed and delivered to his son Joseph the following instrument, which was proved by the two subscribing witnesses, and admitted to record:

"Whereas, my son Joseph Gapen deposited with me, to take care of for him, about the year 1864, he being in the Union army, and under age, the sum of eight hundred and eighty five dollars, with seven hundred dollars of the same I purchased of William L. Miller the undivided half of a tract of land in Monongalia county, West Virginia, on which I now reside, which land I consider his, and I de-

sire that he shall have it, and I hereby acknowledge said debt of eight hundred and eighty five dollars, and promise to pay the same, with interest from the time I so received the same.    Witness my hand and seal this 27th day of December, 1879.    Amos Gapen.    [Seal.]

"Attest:    T. M. Baker.    James Houston.

"We being present, and saw Mr. Amos Gapen sign the above writing, and heard him acknowledge the same as being his wish and desire and will, and we consider him capable of transacting any ordinary business of life.    Thos. M. Baker, James Houston."

After the death of his father, Joseph Gapen, in September, 1892, brought his suit in equity against his brother, Stephen Gapen, alleging that since the death of their father his brother, Stephen, claims an undivided half by descent of the half conveyed to their father, Amos Gapen, by Miller and wife; that he is living upon the land, and asserting title thereto.    Plaintiff alleged that his father, by virtue of having paid for the land with his money, and by virtue of the instrument given him, held the legal title to the undivided half for the use and benefit of plaintiff, and prayed that his brother, Stephen, might be compelled by proper deed of release to convey the same to him, or that a decree be given him for the money, to be enforced by a sale of the land, and for general relief.

Defendant, Stephen Gapen, filed his answer, wherein he denied that the nine hundred dollars was plaintiff's money, received and held in trust for him by their father, but alleged that it was paid to him as the consideration of giving his consent that his minor son should go as a substitute; that he bought of Miller the land in question, paid for it with his own money, and had the same conveyed to himself some two years after plaintiff's return home from the army; that, if there was any understanding that the eight hundred and eighty five dollars was to be paid to plaintiff, it has been paid; and that the recovery thereof is barred by the statute of limitations.    And he further says that when the instrument of the 27th December, 1879, was executed by his father, Amos Gapen, he was *non compos mentis,* could not transact any business, and that such writing was invalid.

On this point the testimony of many witnesses was taken. Eight witnesses testify that Amos Gapen was of sound mind, fifteen testify that he was of unsound mind, and the learned judge who decided the case in the circuit court seems to have been brought to the conclusion that on the 27th day of December, 1879, Amos Gapen was mentally incapable and incompetent to execute the paper writing in question. After going over the testimony, and giving due weight to his opinion on that question of fact, I see no ground for differing with him on such finding.

The next question discussed is, who was entitled, under the circumstances of this case, to what is called the "substitute money," the father or the minor son? This money was paid to the minor by Williams for taking his place as a soldier in the United States army, and assuming the risk of life and limb and loss of health and hardships and privations incident to his service as a soldier. The father consented to his minor son's entering into the military service of the United States government. These risks were all the son's, not the father's; and we think the money he thus received, as well as his regular pay as a soldier, should be regarded as belonging to the son, and not to the father; and this view seems to have the sanction of the courts as far as I have been able to examine the cases. See *Baker* v. *Baker* (1868) 41 Vt. 55; *Banks* v. *Conant* (1867) 14 Allen, 497; *Mears* v. *Bickford* (1867) 55 Me. 528; *Magee* v. *Magee*, 65 Ill. 255; *Cadwell* v. *Sherman*, 45 Ill. 348; Schouler, Dom. Rel. (5th Ed.) § 252a. A different view is taken in *Bundy* v. *Dodson*, 28 Ind. 295, and in *Ginn* v. *Ginn* (1872) 38 Ind. 526. But in the case of *Halliday* v. *Miller* (1887) 29 W. Va. 424 (1 S. E. 821) the cases are reviewed and discussed, and the conclusion reached that the bounty as well as the pay as a soldier belong to the minor, and not to the father; citing *Mears* v. *Bickford*, 55 Me. 528, with approval. Enlistment in the army or navy suspends the parent's right of control, and all wages, bounties, and prize money belong to the minor. 17 Am. & Eng. Enc. Law, 382; citing *Taylor* v. *Bank*, 97 Mass. 345, and other cases.

The circuit court held that the minor son was entitled to this money, and that the father received it in trust for him,

and invested a portion of it in this land. I think the direct evidence, as well as the circumstances of the case, tend to show with a good deal of certainty that this money was intrusted to the father to take care of for the son, and that for that purpose he had invested a part of it in this land, after his son came home. How much, does not appear; but the inference would be five hundred dollars, the down payment. Amos Gapen, by accepting this trust, made himself the *de facto* guardian of his minor son's estate as represented by this substitute money. The true legal notion of guardian does not imply orphanage, or at least not that the father is dead. On the contrary, the first and most frequent instance of guardianship is that of the minor's parents. A guardian is defined to be one appointed by the policy of the law to take care of a minor's person or estate or of both person and estate. 1 Minor, Inst. 451; 1 Bl. Comm. 460; 2 Kent, Comm. 217. Amos Gapen was the self appointed guardian, curator of this fund. He would properly be chargeable with interest on the fund; but the conclusion reached by the court on this point is, as far as I can see, the best practical settlement of this point as presented in this record.

But the said Joseph Gapen is not entitled to interest on any part of said money received by his father, Amos Gapen, except as hereinafter stated, because he lived upon and received a part of the rents and profits of the said land, and had made his home with his father until his father's death.

Is this claim barred by the limitation of five years? It is not simply a case of money had and received of or belonging to Joseph Gapen, but this suit is based on the trust and confidence arising out of the fiduciary relation assumed by the father in regard to this fund, and there is no other limitation than that which may be applied to stale and antiquated claims; and this was not only an express trust, but appears to have been recognized as a continuing one so far and for the time during which Amos Gapen could be said to be of sound mind. Has the claim been fully paid and satisfied? I think it appears from the record in this case that all the credits which Amos Gapen's estate seems to be en-

titled to have not been given  The court, in the decree com-
plained of, gave credit for three items footing up five hun-
dred dollars, leaving a balance of three hundred and eighty
five dollars; whereas the commissioner who had the account
to settle under the decree says that property to the value of
four hundred and fifty nine dollars and fifty cents, belong-
ing to Amos Gapen and the plaintiff jointly, was sold by
the plaintiff before the death of Amos Gapen, and that
plaintiff never accounted to his father for his half; and that
the Baltimore & Ohio Railroad Company paid to plaintiff
five hundred dollars for a right of way through their undi-
vided land; that the whole of it was paid to or went to the
use of plaintiff, Joseph Gapen, and his father never re-
ceived any part of the same.

No explanation is given or anywhere appears why the
commissioner was not permitted to report on these and
other items of credit, if any.  That should certainly be done
before there is any final decree.  In *Pecks* v. *Chambers*, 8
W. Va. 210; *Wiley* v. *Mahood*, 10 W. Va. 206; *Rose* v. *Brown*,
11 W. Va. 123—it is held to be error to decree a sale with-
out at the same time giving the defendant a day in which
to redeem; and merely to postpone the day of sale is not
giving such day.

The case will have to go back, in order that the cause
may be referred to a commissioner to take the proper ac-
counts showing what, if anything, is due to plaintiff from
the estate of Amos Gapen on account of the substitute
money in the bill and proceedings mentioned which came
to the hands of the decedent.

Reversed and remanded.

BRANNON, JUDGE:

While I agree with JUDGE HOLT in holding the
demand not barred, it is not on the ground that it is a
trust.  The trusts not within the statute of limitations are
direct or express trusts, cognizable only in equity.  Im-
plied, resulting, and constructive trusts come under the
statute.  Bart. Ch. Prac. 110; 1 Rob. Prac. (New.) 458; 2
Wood, Lim. § 200; *Sheppards* v. *Turpin*, 3 Gratt. 373; *Spei-
del* v. *Henrici* 120 U. S. 377 (7 Sup. Ct. 610).  This case is

one merely of deposit of money by one with another, for which action at law lies; and the question is not one of the character of the demand, but, when does the statute begin to run ?  I hardly think a suit could have been maintained until demand, and, if so, the statute does not begin until then.  Then action at law, not in chancery, would lie, and the statute would apply.  The statute does not run against a bank having a deposit until demand, and so here.  1 Wood, Lim. §§ 17, 142; 13 Am. & Eng. Enc. Law, 721; Story, Bailm. § 107; 1 Rob. Prac. 473.  I confess that I have difficulty on the question of the statute.  Although I think the demand was necessary before suit, yet that can not be postponed forever, as the rule seems to be that a demand must be made within the statute limit; but, considering the nature and circumstances of this deposit, and the relation of the parties, I would say that no time was contemplated, but delay in making demand or payment was contemplated.  1 Wood, Lim. 315.