INHABITANTS OF CARTHAGE *vs.* INHABITANTS OF CANTON.

SAME *vs.* INHABITANTS OF LEWISTON.

Franklin.     Opinion April 27, 1903.

*Pauper.   Derivative Settlement.   Minors.   Parent and Child.   Emancipation.*

It is well settled in this State that a minor child may become emancipated from its parents.

An emancipated child will not take the subsequently acquired pauper settlement of its parent, but will take by derivation that of the parent at the time of the emancipation.

Emancipation must be by consent, express or implied of the parent if living, and is an entire surrender of all right to the care, custody and earnings of the child, as well as a renunciation of parental duties. It occurs by the voluntary act of the parent in surrendering the rights and renouncing the duties of his position, or, in some way conducting in relation thereto in a manner which is inconsistent with any further performance of them.

For the purpose of determining whether or not a parent has thus voluntarily surrendered all right to the care, custody and earnings of his child, and renounced all future parental duties, it is frequently of the greatest importance to ascertain the subsequent conduct of parent and child, and this may throw great light upon the intention of the parent at the time of the claimed emancipation.

The pauper settlement of one who, as a child, was emancipated from his parents, and has never gained a settlement on his own account, continues in the town where the father's settlement was at the time the emancipation took place.

On report. Judgment for plaintiff against Canton.

Actions of assumpsit for pauper supplies furnished by the plaintiff town to a man and his family who fell into distress in Carthage.

The pauper had never gained a settlement in his own right either in any of the three towns concerned or elsewhere.

The case appears in the opinion.

*E. E. Richards,* for plaintiff.

*J. P. Swasey,* for defendant town of Canton.

*J. W. Mitchell and A. T. L'Heureux,* City Solicitor, for defendant City of Lewiston.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, SPEAR, JJ.

WISWELL, C. J. These two cases are submitted together to the law court upon a report of the testimony, which is applicable to both.

Pauper supplies were furnished by the plaintiff town to one George Jones and family between December 9, 1900, and April 13, 1901. During that period the pauper had his settlement either in the town of Canton or in the city of Lewiston, and the question submitted for the determination of the court is, which municipality is liable to the plaintiff town, no question being made as to the necessity for pauper assistance, the amount of the supplies furnished, the reasonableness of the charges or the statute notices and replies.

It is agreed that the pauper never gained a pauper settlement in his own right. At the time of his becoming of age his father's settlement was in the city of Lewiston, but it is claimed by the defendant

in the case against Lewiston, that the pauper was emancipated by his father many years before that time, while the latter's settlement was in the town of Canton, and that the pauper took the settlement of his father at the time of such emancipation. This is the single question presented for our determination.

Bearing upon this question the following facts are material: The parents of the pauper separated in the year 1875, or just before the commencement of that year. They were divorced upon the libel of the wife at the October term, 1876, of the Supreme Judicial Court for Kennebec County, and at the same time a decree was made giving the care and custody of the two minor children, the pauper being one of them, to the wife. In the libel the date of the birth of George was given as Oct. 7, 1868, and this substantially corresponds with the less exact testimony of the father as to the son's age. After the separation of the parents, but before the decree of divorce, the father, then living at Pittston, took his two young boys to Canton where he stayed, and kept them with him, for about two months; during that time he made various efforts to obtain homes for the boys, but at the expiration of that time, being unsuccessful in these efforts, he left the two boys with the selectmen of the town, by whom they were carried to the poor farm, and the father went to Lewiston where he has continued to reside ever since. From the time in 1875, when the father left his two sons in Canton, he exercised no care over them whatever, he did not see them again until they had become, as he expresses it, men grown, he did not communicate with them directly or indirectly in any way, he in no way exhibited any interest in them, nor sense of responsibility as to their welfare, he contributed nothing to their support, made no claim for their earnings and had no knowledge of the manner in which they were cared for, or as to what they were doing, he did not even see the son, George, except upon two casual and brief occasions, until after the latter had become twenty-one years of age and was married.

During this period the father was by no means in a condition of destitution. Shortly after he commenced living in Lewiston in 1875 he obtained employment, and continued to be steadily employed with occasional exceptions when he was unable to work on account

of sickness, up to the present time. During this time he received as wages $1.50 per day, or $10 per week, except that sometimes during the winter he worked in the woods for $16 per month and his board. In addition to this, in about the year 1881, he commenced to receive a pension of $4 per month, which in 1884, after an intermediate increase to $8 per month, was increased to $12 per month. In about 1879, the father remarried and has a son by his second marriage, who is now about 21 years of age.

In this State the doctrine has become settled by a long line of decisions that a minor child may become emancipated from its parent, and that in such case the child will not take the subsequently acquired settlement of its parent, but will take by derivation that of the parent at the time of the emancipation. What is emancipation is a question of law, whether or not there has been an emancipation is one of fact. In this case both questions are submitted to the court.

This question of emancipation must, of course, be determined upon the peculiar facts and circumstances of each case, and nothing more than general rules or tests can be laid down which will be applicable to all cases. But this has been done in several instances by this court. In *Lowell* v. *Newport*, 66 Maine, 78, it was said: "It must be by consent, express or implied, of the parent if living, and is an entire surrender of all right to the care, custody and earnings of the child, as well as a renunciation of parental duties." In *Sanford* v. *Lebanon*, 31 Maine, 124, it was said that the test to be applied is that of "the preservation or destruction of the parental and filial relations." In *Monroe* v. *Jackson*, 55 Maine, 59, it is said that emancipation occurs "by the voluntary act of the parent in surrendering the rights and renouncing the duties of his position, or, in some way, conducting in relation thereto in a manner which is inconsistent with any further performance of them." It is, of course, true that for the purpose of determining whether or not a parent has thus voluntarily surrendered all right to the care, custody and earnings of his child, and renounced all future parental duties, it is frequently of the greatest importance to ascertain the subsequent conduct of

parent and child, as this may throw great light upon the intention of the parent at the time of the claimed emancipation.

Applying these general rules, thus somewhat differently stated, to the facts of this case, we are satisfied that there was an entire surrender by the father of his right to the care, control and earnings of his children, and a renunciation of his parental duties towards them, at the time that he left them in Canton in 1875. His conduct from that time on has been entirely inconsistent with any other theory. It can not be said that the parental and filial relation exists between a father and a child, when the father has abandoned his child of the age of seven years, and never after that time exhibited any interest in or sense of responsibility as to his welfare, contributed nothing to his support when support was needed, and claimed none of his earnings after he had become more than self-supporting, when he does not in any way communicate with his child, and is entirely ignorant of what the child is doing or of what is being done for him.

It is undoubtedly true that the mere separation of father and child, or the mere failure of the former to contribute to the support of the latter, are not sufficient for the purpose of showing such a voluntary abandonment and renunciation as are necessary to constitute an emancipation. These conditions may be accounted for by reason of the misfortune, or destitution of the father, without disclosing any intention upon his part to permanently terminate the parental and filial relation. But in this case, as we have seen, the father was not in a condition of poverty; during all of this time he was receiving fair wages, with practically steady employment. In addition to this he received a pension, which, for a number of years before the son became of age, amounted to $12 per month. He could have supported these two children if he had desired to, and the fact that he never contributed anything towards their support after his abandonment of them in 1875, and since then has evinced no interest whatever in their welfare, is satisfactory evidence to us that he did not support them for the reason that he did not want to, and that he understood he had no further concern as to them. As said by this court in *Liberty* v. *Palermo*, 79 Maine, 473 : ‘ The separation of the

child from the father was not occasioned through poverty, nor in other respects did the parental and filial relation continue."

We have not considered the effect of the decree giving the divorced wife the custody of these children, because we are satisfied that there was an emancipation prior to that time, and also because it appears from the case that the mother in fact did not have any care, custody or control of the children.

As this emancipation took place when, as it is agreed, the settlement of the pauper's father was in Canton, and as the pauper never gained any other settlement than that derived from the father at the time of the emancipation, the town of Canton must be held liable for the supplies furnished. The entries will be,

> *In the case of Inhabitants of Carthage* v. *Inhabitants of Canton, judgment for plaintiffs for $187.15 and interest since the date of the writ.*
>
> *In the case of Inhabitants of Carthage* v. *Lewiston, judgment for defendant.*