STEVE LIPOVAC, Appellee, v. IOWA RAILWAY & LIGHT COMPANY,
Appellant.

**NEGLIGENCE:** Electrical Structure—Trespassing as Defense. The
1 fact that a person injured by coming in contact with a high-voltage
wire was a trespasser on the land of a third party upon whose land
the wire was erected, is no defense to an action for damages for
said injury.

**PARENT AND CHILD:** Emancipation by Desertion—Effect. A parent
2 who deserts and abandons his minor child thereby emancipates him,
and may not maintain an action based on a plea of loss of services
consequent upon the wrongful killing of the child.

Headnote 1: 20 C. J. p. 340. Headnote 2: 17 C. J. p. 1217; 29 Cyc.
p. 1674.

Headnote 1: 3 L. R. A. (N. S.) 988; 34 L. R. A. (N. S.) 1094; 52
L. R. A. (N. S.) 605; 9 R. C. L. 1207. Headnote 2: 20 R. C. L. 610.

*Appeal from Dallas District Court.*—J. H. APPLEGATE, Judge.

OCTOBER 26, 1926.

Action by a father to recover damages for the loss of ser-
vices of his minor child, aged thirteen, who was killed by coming
in contact with a high-tension electric wire belonging to the
defendant. There was a verdict for the plaintiff, and the de-
fendant appeals.—*Reversed.*

*Harry Wifvat* and *C. Woodbridge,* for appellant.

*White & Clarke,* for appellee.

FAVILLE, J.—I. The appellant is engaged in the business
of transmitting electric current for distribution to its customers
at various places in the state of Iowa. It maintained an electric

line carrying 33,000 volts of electricity, between the cities of Boone and Perry. On the morning of June 15, 1924, trouble was discovered on said line near the town of Woodward. Employees of the appellant discovered a high-line pole that had broken off at the surface of the ground, and had leaned inside the fence into an adjacent cornfield. The high-tension wires were intact on the pole, and were not grounded. They were about 25 or 30 feet from the fence line. The employees of the appellant left the pole and wires in the same situation in which they found them, without guards or notice, and returned to Woodward. They were gone for a space of from 15 to 25 minutes. While they were gone, the son of appellee, who was 13 years of age, came in contact with the wire at or near said pole, and received injuries from which he shortly thereafter died. This action is brought by the father of said boy, negligence being predicated upon the failure to keep the poles on which said high-tension wires were placed in proper condition, and negligence being also predicated on the failure to provide signals or proper warning to persons after the appellant's employees knew of the dangerous condition of said pole. The answer was a general denial. It is admitted by appellant that the boy came to his death by coming in contact with the high-tension line of the defendant company.

Section 8323, Code of 1924, provides:

"In case of injury to any person or property by any such transmission line, negligence will be presumed on the part of the person or corporation operating said line in causing said injury."

There was sufficient evidence to carry the case to the jury upon the question of the defendant's negligence, and the court did not err in submitting the various grounds of negligence to the jury.

II. It is appellant's contention that appellee was not entitled to recover because, at the time of the injury, the boy was a trespasser upon the land of the owner of the cornfield where he was injured. There is no merit in this contention by the appellant. The fact that the dangerous instrumentality was located upon the land of a third person, and that the injured boy may have been a trespasser upon the land of said third

1. NEGLIGENCE: electrical structure: trespassing as defense.

person, is not available as a defense to the appellant. *Godfrey v. Kansas City L. & P. Co.*, 299 Mo. 472 (253 S. W. 233).

III. Appellant's main contention and one ground of its motion for a directed verdict is that the appellee had emancipated his boy, and was not entitled to recover, under the statute, even though the appellant was negligent. This is the important and vital question in the case. At common law, no action will lie to recover damages for the wrongful death of a human being. This has been recognized by the courts of last resort in practically every state in the Union. 17 Corpus Juris 1181; *Lane v. Steiniger*, 174 Iowa 317; *Seney v. Chicago, M. & St. P. R. Co.*, 125 Iowa 290; *Romano v. Capitol City B. & P. Co.*, 125 Iowa 591; *Major v. Burlington, C. R. & N. R. Co.*, 115 Iowa 309; *Sachs v. City of Sioux City*, 109 Iowa 224. Lord Campbell's Act was passed in 1846, and since that time a right of action for death by wrongful act has been given by statute in the various states. The right of recovery being wholly statutory, an action to recover for death by wrongful act must stand or fall by the terms of the statute. It cannot be extended to cases omitted from its provisions, or applied to those not fairly within its purview. *Seney v. Chicago, M. & St. P. R. Co.*, supra.

2. PARENT AND CHILD: emancipation by desertion: effect.

Section 10986, Code of 1924, is as follows:

"A father, or, in case of his death or imprisonment or desertion of his family, the mother, may as plaintiff maintain an action for the expenses and actual loss of service resulting from the injury or death of a minor child."

Appellee could not maintain an action for the death of his minor son except under the provisions of the statute, and must bring himself within its terms in order to be entitled to recover. At the outset, it is to be observed that the statute provides that a father may maintain an action for the *"actual loss of services"* resulting from the death of a minor child. It is the contention of the appellant that, under the undisputed record in the case, there was no evidence of any actual loss of services to the father of the decedent, and that appellant's motion for a directed verdict based upon this ground should have been sustained. The theory of appellant is that, under the record in the case, the appellee, although the father of the deceased, had emancipated said child, so that he suffered no *actual loss of services* whatever.

The appellee was not a witness in the case. A cousin of his was a witness. He testified that he had known the boy ever since he was born; that he was born in Dallas County, and that his father formerly lived in said county; that he had mostly been a coal miner, and had worked in Dallas County until about 1914 or 1915, when he lost his health and went west. He said:

"Before he went west, he was mostly a cook and dishwasher around restaurants. Ivan Lipovac [decedent] made his home the latter years of his life with his uncle, Joe Lipovac."

On cross-examination, he testified that the appellee lived somewhere in California; that he was cooking and washing dishes in restaurants for two or three years before he went to California; that he did this in Davenport, and went from there to California; that he went to Davenport from Albia about 1915 or 1916; that the boy was placed in the orphans' home about 1916 or 1917, and went to live with his uncle about four years ago; that the boy was taken to the orphans' home about the time the father moved from Albia to Davenport, which was about ten years ago.

The uncle testified that the boy had lived at his house three years, nine months, and seven days; that, before he came to the uncle's place to live, he was in the orphans' home at Davenport for two years. He testified:

"I know where his father is now. He is in California. I don't know what town he is in. I don't know his post-office address. I think he wrote to me two weeks ago, but just now I have no address in my head. The last time I saw Steve was about two years ago."

There is a very full and interesting discussion of the question involved, in Swift & Co. v. Johnson, 71 C. C. A. 619 (138 Fed. 867), decided by the circuit court of appeals of this circuit, in which the opinion was written by Mr. Justice Van Devanter. The case arose under the statute of Minnesota, which provides that the right of action is given to the widow and next of kin of the decedent. In that case the father was the next of kin, and the question arose whether or not, under the statute, the father was entitled to recover. The court met squarely the question:

"Did the evidence conclusively establish that the father had lost his legal right to the services and earnings of the son during his minority?"

The court said:

"Generally the father, as head of the family, is entitled to the services of his minor children, or to their earnings, if by his permission they are employed by others. He is also under obligation to support his children during their minority. The right and obligation are correlative, and where the father neglects or refuses to support his child, denies him a home, or abandons him, so that he is obliged to support himself, the law implies an emancipation, and recalls the father's right to the child's services and earnings. *Nightingale v. Withington,* 15 Mass. 272, 8 Am. Dec. 101; *Wodell v. Coggeshall,* 2 Metc. (Mass.) 89, 35 Am. Dec. 391; *McCarthy v. Boston & Lowell R. R.,* 148 Mass. 550, 20 N. E. 182, 2 L. R. A. 608; *Farrell v. Farrell,* 3 Houst. 633; *McGarr v. National & Providence Worsted Mills,* 24 R. I. 447, 53 Atl. 320, 60 L. R. A. 122, 96 Am. St. Rep. 749; *Nugent v. Powell,* 4 Wyo. 173, 194, 33 Pac. 23, 20 L. R. A. 199, 62 Am. St. Rep. 17; *Winslow v. State* (Ala.), 9 South. 728; *Savannah, etc. Co. v. Smith* (Ga.), 21 S. E. 157; *Clark v. Northern Pac. Ry. Co.* (Wash.), 69 Pac. 636, 59 L. R. A. 508; *Thompson v. Chicago, etc., Co.* (C. C.), 104 Fed. 845."

The court reviewed the evidence, showing that the father had abandoned his family when the son was nine years of age and neglected his paternal obligations for a period of seven years preceding the son's death. The court further said:

"No other conclusion was permissible under the evidence than that there had been an emancipation of the son, and that the father had forfeited and lost the right which otherwise he would have had to the son's services and earnings during his minority. As the extent of the loss which is intended to be compensated under the statute is not to be determined solely by the legal rights of the beneficiary, but with reference to the pecuniary benefit which he may have reasonably expected, as of legal right or otherwise, it is yet to be considered whether or not there was any substantial evidence of a reasonable expectation of pecuniary benefit to the father, otherwise than as of legal right. The law, in confining the compensation to the pecuniary loss, does not run along the lines of the imaginary and the possible, but rather along the lines of the actual and the probable, and therefore the reasonable expectation must be made to appear by the evidence. Conjecture, speculation, and fancy cannot supply

the absence of evidence, or avoid the effect of the evidence which is presented. The conditions surrounding the beneficiary and the deceased at the time of the death, their past relations, and the law of human experience are the sole criteria of the expectation and of its reasonableness. Other conditions or changed relations, not reasonably probable, cannot be conjectured and assumed, merely because of the possibility of their accomplishment and their conformity to higher ideals. As was said by Mr. Justice Brewer, when a member of the Supreme Court of Kansas: 'The enigma of the future of a life is not to be solved by the mere matter of faith and hope, or even by the natural possibilities of accomplishment, but mainly and chiefly by the experiences of the past, and what the life has already been.' *Atchison, etc., Co. v. Brown*, 26 Kan. 443, 460. .The natural influence or prompting of kinship is always an important factor in cases like this, and is to be carefully considered, but it is not controlling. A father can have no reasonable expectation of pecuniary benefit from the continued life of a son who, although possessing a strong filial love, is without property and is incapacitated from labor of all kinds, or who, although possessed of property or earning capacity, has unmistakably shown that he is insensible to the natural influence or prompting of kinship. So, also, a father who willfully abandons a minor son, and for several years proves insensible to every legal, moral, and natural obligation to him, can have no reasonable expectation of pecuniary benefit from his continued life while that situation continues. The case before us is of this type. * * * There was some evidence that the father and son retained some affection each for the other; and it is urged that, had the son lived, the natural relations of father and son might have been restored. A restoration was possible, but this evidence was too slight to overcome the effect of the seven years of willful abandonment, neglect, and separation. It afforded a basis for conjecture, but not for belief.''

The opinion of the learned justice is so applicable to the situation in the instant case that comment thereon is unnecessary. Cases involving the question under consideration have most frequently arisen where the father claimed a right to the services of his minor child. The same rule, however, would obtain where the father was seeking to recover for the actual loss of services, under the statute. The rule is well settled that, if

the father emancipates his minor child, he is no longer entitled to the earnings of such child, and emancipation may be inferred by acts. Emancipation of a minor occurs by the voluntary act of the parent, and may be shown by the parent's conduct in relation to the child in a manner inconsistent with the performance of his rights and obligations. *Inhabitants of Carthage v. Inhabitants of Canton*, 97 Me. 473 (54 Atl. 1104); *Thompson v. Chicago, M. & St. P. R. Co.*, 104 Fed. 845.

In *Bristor v. Chicago & N. W. R. Co.*, 128 Iowa 479, we said:

"Such emancipation may be by parol or in writing, and may be proven by circumstantial evidence or implied from the conduct of the parties."

See, also, *Everett v. Sherfey*, 1 Iowa 356; *Wolcott v. Rickey*, 22 Iowa 171; *Bener v. Edgington*, 76 Iowa 105; *Kubic v. Zemke*, 105 Iowa 269; *Halliday v. Miller*, 29 W. Va. 424 (1 S. E. 821); *Flynn v. Baisley*, 35 Ore. 268 (57 Pac. 908). The rule that there may be a so-called implied emancipation by the act of the father, so that he is not entitled to the services of his child, has been applied under a great variety of circumstances. As bearing on the question, see *Rounds Brothers v. McDaniel*, 133 Ky. 669 (118 S. W. 956); *Jackson v. Citizens Bank & Tr. Co.*, 53 Fla. 265 (44 So. 516); *Inhabitants of Carthage v. Inhabitants of Canton*, supra; *Inhabitants of Lowell v. Inhabitants of Newport*, 66 Me. 78.

We think, upon the record, that the court erred in not directing a verdict in behalf of the appellant on the grounds that the evidence showed that the appellee had deserted and abandoned the deceased and, in legal effect, had emancipated him. The court not only overruled the motion for directed verdict, but did not submit the question in any form to the jury. For the reason pointed out, the judgment of the district court must be, and it is, reversed.—*Reversed*.

DE GRAFF, C. J., and STEVENS and VERMILION, JJ., concur.