## WALDERMEYER v. LOEBIG et al., Appellants.

### Division One, July 1, 1904.

1. **MECHANIC'S LIEN: After Death of Property Owner.** The probate court has no authority to order the administrator to finish the remodeling of a three-story house in the second story of which the intestate lived and to make an addition thereto, begun during the intestate's life and not finished before his death.

2. ———: ———: **Contract With Intestate.** Where there was no contract with the owner of property for the construction of a building, there is no legal basis for a mechanic's lien in favor of those who finish it after his death, even though the probate court authorized the administrator to take charge of the real estate and complete the work.

3. ———: ———: **Subrogation: Furnishing Money After Intestate's Death.** Where there was no contract with the owner of a three-story building to remodel it and make an addition thereto, made with the owner thereof, a person who furnishes money to those who finish the building after his death, is not entitled to a lien by way of subrogation against the property, for they were not entitled to a lien, and he can not succeed to a right which they did not have. Nor is his or their right

to a lien in any wise created by the fact that the probate court authorized the administrator to take charge of the building and finish it, if the building was of such a character as gave the court no authority, under the statute, to make such order.

4. ————: **Subrogation: General Rule.** Subrogation does not permit a lien to be fastened upon land in favor of one who has paid the debts of others who themselves had no right to a lien. Courts of equity will not create liabilities.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer,* Judge.

AFFIRMED IN PART AND REVERSED IN PART.

*Schulenburg & Meyer* and *Rassieur & Buder* for appellants.

(1) Plaintiff's bill states no cause of action against these defendants, either at law or in equity: (a) The order of the probate court, a court of limited jurisdiction, authorizing the curator to incumber the property of the minors, and the deed of trust and trustee's deed executed pursuant thereto, were wholly void, both at law and in equity. Windleton v. O'Brien, 68 Mo. App. 675; Beal v. Harmon, 38 Mo. 435; Strouse v. Drennan, 41 Mo. 289; Woods v. Boots, 60 Mo. 546; Blackburn v. Bolan, 88 Mo. 80; s. c., 14 Mo. App. 592; Carder v. Culbertson, 100 Mo. 269; Bone v. Tyrrell, 113 Mo. 187; Valle v. Fleming, 19 Mo. 454; Presb. Church v. McElhinney, 61 Mo. 540. (b) Plaintiff does not state facts sufficient to show him entitled to the subrogation claimed. A court of equity will not relieve against a mere mistake of law unmixed with a mistake of fact. Price v. Estill, 87 Mo. 378; Price v. Courtney, 87 Mo. 387; Norton v. Highleyman, 88 Mo. 621; Cornwall v. Orton, 126 Mo. 371; Wooldridge v. Scott, 69 Mo. 669; Lemmon v. Lincoln, 68 Mo. App. 76. (c) Plaintiff, under the allegations of the petition, was a mere volunteer, without any interest to protect or obligation to perform in making his loan. Price v. Estill, 87 Mo. 378; Norton v. Highleyman, 88 Mo. 621; Bunn v. Lindsay,

95 Mo. 250; Kleimann v. Gieselman, 45 Mo. App. 497; s. c., 114 Mo. 437; McDonald v. Quick, 139 Mo. 484; Lemmon v. Lincoln, 68 Mo. App. 76. (d) The probate court's order authorizing the administrator to carry on the work commenced by deceased in his lifetime, and pleaded in the bill, was void, and no mechanic's liens could have been established against the property based on such order. Langston v. Canterbury, 173 Mo. 123; Bird v. Governor, 2 Mo. 102. (e) Plaintiff under the allegations of the bill was the purchaser at the trustee's sale in foreclosure. As such he is charged with knowledge of all the facts connected with the title to the property and he received whatever title was conveyed—no more and no less. McDonald v. Quick, 139 Mo. 484. (f) An infant can not be held nor can his estate be bound for repairs or improvements to his real estate, though they may be necessary to preserve it from serious and immediate damage, and this is equally true where the guardian makes the contract for him. Wallis v. Bordwell, 126 Mass. 366; Price v. Sanders, 60 Ind. 310; Bickwell v. Bickwell, 111 Mass. 265. (2) Under the evidence Louis Horman had no general contract with deceased under which he agreed to furnish the work, labor and materials for the complete construction of the alterations, repairs and improvements, and the existence of such contract was indispensable to him and to the other materialmen to entitle them to the mechanic's liens. Bambrick v. Webster Groves Church, 53 Mo. App. 225; Langston v. Canterbury, 173 Mo. 123; Bird v. Governor, 2 Mo. 102. By the arrangement made early in January, 1897, between Horman and the other materialmen whereby he paid them by assigning to each a claim against the Loebig estate, which they then had allowed, the materialmen thereby waived their liens, if they had any. And plaintiff Waldermeyer was no party to this arrangement and knew nothing of it until six weeks after it had been done. Slate Co. v. Cornice & Iron Co., 62 Mo. App. 569.

*J. H. Trembley* for respondent; *Klein & Hough* and *William Zachritz* of counsel.

(1)   The death of John Loebig did not extinguish the various contracts made by him looking to the repairing and remodeling of his wrecked homestead. Those contracts and the obligations created thereby survived him.   Reicke v. Saunders, 3 Mo. App. 566; Bambrick v. Church Ass'n, 53 Mo. App. 225.   (2) Plaintiff's money, at the solicitation of and under agreement with defendant, Theresia Loebig, and the curator of the minor defendants, was loaned and went to discharge claims which, it is manifest, could and would have been matured into mechanic's liens, and the minor defendants ought not to be allowed to retain the $7,000 turned over by plaintiff to their curator, and by him turned over to himself as administrator and used to discharge claims which would have been established as mechanic's liens superior even to their right of homestead in a part of large premises belonging to them, the rents of which must amount to considerable since default under the terms of the deed of trust supposedly securing plaintiff's money, and yet in a court of equity and good conscience, and notwithstanding the doctrine of subrogation and equitable principles generally, culminating in the Golden Rule, escape all liability therefor.   Sampson v. Mitchell, 125 Mo. 232; Sheldon on Subrogation, sec. 1; McWilliams v. Jenkins, 72 Ala. 187; Crippen v. Chappell, 35 Kan. 495; McNeil v. Miller, 29 W. Va. 480; Rooker v. Benson, 83 Ind. 250; Trust Co. v. Peters, 72 Mis. 1058; Bank v. Bierstadt, 168 Ill. 618; Pomeroy on Equity Jurisprudence, sec. 1212; Harverford Ass'n v. Fire Ass'n, 180 Pa. St. 525.

MARSHALL, J.—This is a bill in equity for a subrogation, or for the establishment of an equitable lien of $9,439.16 upon house number 1812 South Broadway, in the city of St. Louis.   The circuit court charged the

property with a lien for $8,450.78, with interest at six per cent from March 8, 1902, and ordered the property sold to pay the same if the said amount was not paid within ninety days.

The trial developed the facts to be as follows:

Prior to May 27, 1896, John Loebig owned the property, being a lot of ground in city block 711, at the northeast corner of Broadway and Geyer avenue, on which was situated house number 1812 South Broadway. On that day the house was damaged by the cyclone that struck St. Louis at that time. The house was a three-story ·building. The first floor was used as a saloon. The second floor was used by the owner as a residence for himself, his wife and children. The third floor was fitted up and rented as a lodge room. The house was not rendered untenantable by the cyclone, for the family continued to reside in it, but the roof was injured and the house was otherwise damaged. The total damage amounted to some fifteen hundred dollars. The house and lot before the cyclone were worth about $7,600.

After the cyclone the owner, Loebig, sent for one Louis Horman, and had him prepare a sketch and estimate for not only repairing the damage to the building, but also for remodeling it, and for building a new three-story addition to it on its rear. No written contract was made therefor with Horman. The plaintiff's theory is that Horman became the general contractor, and that the other persons who did work and furnished materials, were the subcontractors, but there is no substantial evidence to support that view of the case, for Horman testified, and there was no countervailing testimony, that he never was the general contractor, but that he was contractor for a part of the work, and was superintendent of the work, and that Loebig directed him to employ other contractors to do the other parts of the work, and that some of them were so employed before Loebig's death, and some of them he employed after Loe-

big's death because the widow begged him to have the work finished, and that he gave the work to the persons whom Loebig had promised it to. Loebig died on August 18, 1896. At that time comparatively few contracts for the work had been made, and only about six hundred and fifty dollars worth of work and materials had been done or furnished. After his death work and materials were done and furnished, upon the order of Horman, amounting to about eight thousand dollars. Horman's claim for the work done by him amounted to $2,109.45, and was done between July and December, 1896, but the amount thereof which was done prior to Loebig's death is not separately stated. Loebig paid only one hundred dollars in his lifetime, on account of the work. After his death the widow paid $408.

On October 1, 1896, D. I. Neudorf was appointed administrator of the estate, and also curator of the three minor children, one of whom has since died. On October 9, 1896, Neudorf obtained an order of the probate court directing him to take charge of the real estate and also to complete the work of reconstructing said building, he representing to the court that it would cost about $5,500 to do so. The administrator then proceeded to have the work of reconstructing the building completed, which was done by December. The contractors and materialmen wanted their money and were threatening to file mechanic's liens. A consultation was held between them, Neudorf and the widow, with the result that it was agreed that Horman should make out claims against the estate for the amounts of the several contractors and should assign to each a claim equal to the amount of his claim, and they should all be proved up against the estate of John Loebig. This was done and claims aggregating more than $9,000 were proved up by the several parties against Loebig's estate, on January 8, 1897. On January 19, 1897, Neudorf, as curator of the minors, procured an order from the probate court authorizing him to borrow $7,000 to be

secured by a deed of trust on the property, and to use the same to pay said claims. Accordingly on February 15, 1897, Neudorf borrowed seven thousand dollars, for five years, at six per cent interest, from the plaintiff, and secured it by a deed of trust on the property, which recited that Neudorf was acting by virtue of the said order of the probate court. The widow joined in the deed of trust. The money thus borrowed by Neudorf as curator was turned over to himself as administrator, and by him, in his latter capacity, used to pay said claims. Default was made in the payment of the fifth installment of interest, and on April 25, 1900, the deed of trust was foreclosed, and the plaintiff became the purchaser of the property for $9,100, and received a deed therefor. He demanded possession, which being refused he instituted an action of ejectment against the widow and the minor heirs. He was defeated in that case, the circuit court holding that the order of the probate court authorizing the curator to borrow the seven thousand dollars, and the deed of trust and the plaintiff's deed resulting from the foreclosure thereof, were void. There was no appeal from that judgment. The plaintiff then instituted this suit in equity against the widow, the two surviving minor heirs, and the trustee under the deed of trust who had the surplus arising from the sale of the property over the debt secured in his hands. The trustee paid said surplus, amounting to $1,662.75 into court, and took no further steps in the case. The circuit court entered a decree for the plaintiff for $8,450.78, with six per cent interest from March 8, 1902, charged the property with a lien for that amount, and ordered it sold to satisfy the same if it was not paid within ninety days, and ordered the deed of trust and the trustee's deed foreclosing the same to be cancelled, and awarded to the plaintiff the surplus so paid into court by the trustee. From this judgment the defendant appealed.

## I.

The plaintiff predicates a right to recover upon the doctrine of subrogation.

That is, the plaintiff contends that Loebig had contracted to have the work done, and that under the decisions of the St. Louis Court of Appeals in Reicke v. Saunders, 3 Mo. App. 566, and Bambrick v. Presbyterian Church Assn., 53 Mo. App. 223, the death of Loebig had no effect upon that contract, but the contractor had a right to complete the contract, and the executor or administrator had a right to have it completed, and that the contractor and subcontractors were entitled to file mechanic's liens against the land therefor, and that notwithstanding the order of the probate court authorizing the curator to borrow the $7,000 on the security of the land, and the deed of trust made by the curator to secure such loan, and the trustee's deed foreclosing the deed of trust, were all void, nevertheless the plaintiff's money went to pay off the claims of such contractors, the land was thereby benefited to that amount, and hence under the authority of this court in Sampson v. Mitchell, 125 Mo. l. c. 232, the plaintiff is entitled to be subrogated to the rights of the contractors and to have an equitable lien on the property for the money so furnished by him.

Conceding, for the purposes of the argument, that the decisions of the St. Louis Court of Appeals referred to are correct, and that the death of the owner does not affect a contract by a third person with him to build or reconstruct his house, and that such contractor is entitled to a mechanic's lien for the work and labor done and materials furnished after as well as before the owner's death, it does not follow that the plaintiff in this case is entitled to recover, for there is no substantial evidence in this case that the owner, Loebig, made any such contract with Horman. On the contrary Horman says he made no such contract, but that the bulk of the contracts were made after Loebig's death, and were:

made because the widow begged him to finish the work, and they were manifestly made, partly, if not chiefly, upon the faith of the validity of the order of the probate court directing the administrator to take charge of the real estate and to complete the work, which the administrator attempted to do. It is true Horman says that after the work was completed, the other contractors forced him to act as a general contractor, and it is also true that in consequence of the consultation between the contractors, the administrator and the widow, the claims were all made out against the estate in the name of Horman, and were assigned by him to each contractor for the amount due each, but these were clearly afterthoughts and devices resorted to in order to overcome the difficulties of the case, and at best could only amount to self-serving declarations, which could not bind the minor defendants.

So that the first premise of the plaintiff's syllogism must fail. There was no contract existing at the date of the death of the owner, which could be carried out. The work contemplated had not been finished, but the probate court had no power to order the administrator to finish it. [Langston v. Canterbury, 173 Mo. 122.] The work here done was not of the character contemplated by sections 100 and 101, Revised Statutes 1899, and, therefore, those sections afford no authority for the order of the probate court under consideration.

There was no legal basis, therefore, for the establishment of mechanic's liens for so much of the work as was done after Loebig's death. Nor, in truth, was there any legal claim created thereby against the Loebig estate.

This being true, the plaintiff could be subrogated only to such rights as the contractors had, and could acquire no better right than they had. As they had no right to a lien on the land, the plaintiff acquired no right, by subrogation, to any such lien. In this respect the case differs essentially from Sampson v. Mitchell,

125 Mo. l. c. 232, for in that case the taxes were a lien on the land, and as the plaintiff's money was used to pay the taxes, it was held that the plaintiff was subrogated to the State's lien on the land for the taxes. Here, however, there was no lien on the land, and none could be established against the land for so much of the work as was done after Loebig's death, and the estate could not even be made liable for that work. The plaintiff's money was not used to pay a lien on the land, nor to discharge claims that might become liens on the land, or even that might be allowed against the estate. The only right the plaintiff could acquire by subrogation in this case was the right that the contractors had to demand payment from the individuals who ordered the work to be done.

But it is argued that the doctrine of subrogation "is a mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity and good conscience, ought to pay it." The doctrine is thus stated in Sheldon on Subrogation (2 Ed.), sec. 1: "Subrogation is a doctrine primarily of equity jurisprudence, although its principles are now often applied in courts of common law, especially in those States in which equitable remedies are administered through the forms of law. It is a substitution, ordinarily the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debts. More broadly, it is the substitution of one person in the place of another, whether as a creditor or as the possessor of any other rightful claim. The substitute is put in all respects in the place of the party to whose rights he is subrogated. It has been adopted from the civil law by courts of equity. In this country, under the initial guidance of Chancellor KENT, its principles have been more widely developed, and its doctrines more generally applied, than in England. It is treated as the creature of equity, and is administered so as to secure real and

essential justice without regard to form, independently of any contractual relations between the parties to be affected by it. It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter; but it is not to be applied in favor of one who has, officiously and as a mere volunteer, paid the debt of another, for which neither he nor his property was answerable, and it is not allowed where it would work any injustice to the rights of the others.''

It is, however, axiomatic that neither courts of equity nor courts of law create liabilities. Their proper functions are to enforce rights, and their powers cease when the rights are enforced.

When Loebig was alive he could create a right in others which the courts would enforce against him, and in certain cases against his land. When he died, his right to the land ceased. Whatever rights thereafter existed, were the creatures of law. The law provides that subject to the right of the probate court to administer upon the land for the purpose of paying the debts of the estate, the land descended to the heirs, encumbered with only such debts as the ancestor legally charged upon them in his lifetime.

Loebig did not charge the land during his lifetime with the debts which plaintiff's money paid. Those debts were not even legal charges against the estate. They were not liens upon the land, nor were they charges against the estate in the hands of the heirs. Many acts of third persons benefit property of others, but while they create good moral claims, they fall short of being legal demands. When the text-writers speak of debts which in justice, equity and good conscience ought to be paid, they refer to legal claims, and not to mere moral obligations.

The land in this case was no doubt benefited, and the contractors had a good moral claim to compensation

against the land, and the owners thereof, but they had no legal claim thereto and no lien or right to lien therefor. The plaintiff's money paid those claims of the contractors, and the plaintiff is entitled to be subrogated to the rights of those contractors. But as those contractors had only a moral claim, the plaintiff could get only a moral claim by subrogation. And as no legal right to a lien on the land existed in favor of the contractors, and as the plaintiff acquired none, no court can create it for them.

Speaking for myself, I am of the opinion that the law is defective in cases of this kind, and that the Legislature should remedy it by appropriate legislation. The right to take land by will or descent arises solely out of the bounty of the law. Without such statutes, all land would escheat to the State upon the death of the owner. In such cases, therefore, it would be perfectly competent for the State to provide by law for the completion of unfinished buildings or improvements upon land, by the executor or the administrator, under the direction of the probate court, and for the application and extension of the mechanic's lien law to such cases, and I think it would be wise for the State to so provide. But the power to do so belongs to the Legislative department of the State, and not to the courts. I am of the opinion that the plaintiff has a good moral claim, and that the heirs ought to pay him, but the court is powerless to compel them to do so.

The money that was paid into the court by the trustee, being the excess realized at the foreclosure sale over and above the amount due the plaintiff, is the plaintiff's money and was properly awarded to him. The judgment in that respect is right and the judgment declaring the deed of trust that was put on the land by Neudorf as curator, and the deed by the trustee, to the plaintiff, to be void, and ordering them cancelled, is also correct. In these respects the judgment is affirmed.

But the judgment declaring that the plaintiff is en-

titled to recover $8,450.78, with six per cent interest from March 8, 1902, and charging it as a lien on the land, and ordering the land to be sold, if the same is not paid, is without authority of law, and is therefore reversed.

All concur.