# Vincennes Bridge Company v. Guinn's Guardian.

(Decided December 3, 1929.)

J. W. CRAFT and SEYMOUR RIDDLE for appellant.

NAPIER & HELM for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

Cleveland Guinn, by his guardian, brought this action to recover against the Vincennes Bridge Company

for a personal injury. On the trial of the case there was a verdict and judgment in his favor for $3,000. The defendant appeals.

The plaintiff's own statement of his case is this: In September, 1927, the bridge company was erecting a bridge at Hazard. He went to the foreman and asked for a job, telling the foreman that he was over 16 years of age, because he knew that if he did not tell him this he could not get a job. The foreman employed him. He shoveled gravel, carried steel and water, carried cement, and did general work. He worked about three weeks. The cement was hauled on a truck from the railroad depot to the end of the bridge to the mixer. He was helping to unload the truck of the cement on the 20th day of October. They seemed to be in a rush, and in unloading the truck some one put two sacks of cement on his shoulder and he started to walk with the cement, and, when he went a few steps, he felt something tear in the lower left side of his abdomen. The sacks weighed 100 pounds each. He had gone about two steps before he was injured. It was about eight steps to the mixer to which the cement was to be carried. That night blood passed from him in considerable quantity. He was sick from the time of his injury and unable to do any more work. The blood continued to pass for some time then he got better, but it would pass again whenever he lifted anything or did any work. He was unable to state who put the sacks on his shoulder or who was present at the time. The work he was doing was the usual work done by the men at the truck, except that usually each person carried one sack of cement. He was born on January 15, 1912, and was not 16 years of age when the trouble occurred.

The only testimony as to the permanency of his injury is this statement by his physician:

"Q. Assuming doctor that this man had the condition which you found and described to the jury and that since that time and up to the present time when this man lifts or strains himself that blood still passes through him, but in much less quantity than when he was first injured, what would you as a medical man say? A. I would assume he had some permanent trouble that had not been recovered."

The plaintiff's whole case rests on the ground that he was employed when he was under 16 years of age in violation of the statute. The material provisions of the statute are these:

"No child between fourteen and sixteen years of age shall be employed, permitted or suffered to work in or in connection with any factory, mill, workshop, mercantile establishment, store, office, printing establishment, bakery, laundry, restaurant, hotel, apartment house, theatre, motion picture establishment, or in the distribution nor transmission of merchandise or messages, unless the person, firm or corporation employing him procures from the local school authorities and keeps on file and accessible to the truant officers and to the labor inspectors, an employment certificats as hereinafter prescribed, and keeps two complete lists of all such children employed therein, one on file and one conspicuously posted near the principal entrance of the building in which such children are employed. On the termination of the employment of a child so registered, and whose certificate is so filed, such certificate shall be returned by the employer to the officer by whom it was issued within two days of the termination of the employment of such child. A labor inspector may make demand on an employer in whose establishment a child apparently under the age of sixteen years is employed or permitted or suffered to work and whose employment certificate is not then filed as required by this act, that such employer shall either furnish him, within ten days, evidence satisfactory to him that such child is in fact sixteen years of age or over, or shall cease to employ, or permit, or suffer such child to work therein. A labor inspector may require from such employer the same evidence of age of such child as is required for the issuance of an employment certificate, and the employer furnishing such evidence shall not be required to furnish any further evidence of the age of the child. In case such employer shall fail to produce and deliver to the labor inspector, within ten days after such demand such evidence of the age therein required of him, and thereafter continue to employ such child, or permit, or suffer such child to work in such establishment, proof of the giving of such notice and of such failure to produce and file such,

evidence shall be prima facie evidence in any prosecution brought for violation of the provision that such child is under sixteen years of age and is unlawfully employed." Ky. Stats., sec. 331a2.

"Truant officers may visit mines, factories, mills, workshops, mercantile establishments, stores, offices, printing establishments, . . . hotels, apartment houses, theatres and motion picture establishments, in their several towns and cities and ascertain whether any minors are employed therein contrary to the provisions of this act, and they shall report any cases of such illegal employment to the superintendent of schools and to the labor inspector, or other authorized officer of the state. Labor inspectors and truant officers may require that the employment certificates and lists, provided for in this act, of minors employed in such establishments shall be produced for their inspection. Complaints for offenses under this act, except as to the employment of children in mines, shall be brought by the labor inspector. The provisions of this act with regard to the employment of children in mines shall be enforced by the state inspector of mines and his assistants, who shall bring all complaints for violation of the same." Ky. Stats., sec. 331a8.

"No child under the age of sixteen years shall be employed, permitted or suffered (1) to sew or assist in sewing belts in any capacity whatever; (2) nor to adjust any belt to any machinery; (3) nor to oil, wipe or clean machinery; (4) nor to operate or to assist in operating any of the following named machines: (a) circular or band saws; (b) wood shapers; (c) wood joiners; (d) planers; (e) sandpaper or wood polishing machinery; (f) emery or polishing wheels used for polishing sheet metals; (g) wood turning or boring machinery; (h) picker machines or machines used in picking wool, cotton, hair or other materials; (i) carding machines; (j) paper-lace machines; (k) lyeather burnishing machines; (l) job or cylinder printing presses operated by other power than foot power; (m) boring or drill presses; (n) stamping machines used in sheet metal and tinware or in paper and leather manufacturing, or in washer and nut factories; (o) metal or paper cutting machines; (p) corner staying machines in paper box factories; (q) corrugating rolls such as

are used in corrugated paper, roofing or washboard factories; (r) steam boiler, steam machinery or other steam generating apparatus; (s) dough bakes or cracker machinery of any description; (u) rolling mill machinery; (v) power punchers or shears; (w) calender rolls in paper and rubber manufacturing; or (y) laundering machinery; (5) nor work in proximity to any hazardous or unguarded belts, machinery or gearing; (6) nor to work upon any railroad whether steam, electric or hydraulic; (7) nor to operate or assist in operating any passenger or freight elevator; (8) nor to work in any capacity in processes in which dangerous or poisonous acids are used; (9) nor to work in any capacity in the manufacture or packing of paints, colors of white or red lead; (10) nor to work at soldering; (11) nor to work in occupations causing dust in injurious quantities; (12) nor to work in the manufacture or use of dangerous or poisonous dyes; (13) nor to work in the manufacture or preparation of compositions with dangerous or poisonous gases; (14) nor to work in the manufacture or use of compositions of lye in which the quantity thereof is injurious to health; (15) nor to work in any tunnel or excavation; (16) nor to work on scaffolding; (17) nor to work in any capacity in, about, or in connection with any mine, coke oven or quarry; (18) nor to work in assorting, manufacturing or packing tobacco; (19) nor to operate any automobile, motor car or truck; (20) nor to work in any bowling alley; (21) nor to work in any pool or billard room; (22) nor to work in any distillery, brewery, or other establishment where malt or alcoholic liquors are manufactured, packed, wrapped or bottled; (23) nor to work in any hotel, theatre, concert hall, club, place of amusement, or any other establishment where intoxicating liquors are sold; (24) nor to work in any other occupation dangerous to the life or limb or injurious to the health or morals of such child, and as to these matters the decision of the county physician or city health officer, as the case may be, shall be final.'' Ky. Stats., sec. 331a9.

To determine the meaning of the act, all its provisions must be read together. Section 331a2 provides that no child between 14 and 16 years of age shall be em-

ployed in certain work, unless the person employing him procures from the local school authorities and keeps on file, accessible to the truant officer and labor inspector, an employment certificate as thereinafter prescribed, and must keep lists of all such children employed there—one on file and one conspicuously posted near the principal entrance to the building in which such children are employed. It also provides that a labor inspector may make a demand on an employer in whose establishment a child apparently under the age of 16 years is employed and whose employment certificate is not then filed as required by this act, and that such employer shall either furnish him, within 10 days, evidence satisfactory to him that such child is in fact 16 years of age or over, or shall cease to employ the child to work therein, and the employer furnishing such evidence shall not be required to furnish any other further evidence of the age of the child, but, in case he fails to furnish such evidence to the labor inspector within 10 days, and thereafter continues to employ the child, proof of such notice and such failure shall be prima facie evidence in any prosecution under the act. The purpose of section 331a2 was to enable the labor inspectors and truant officers to discharge their duties as indicated in section 331a8. It was not designed to place any responsibility upon the employer who acted innocently upon the assurance of the employee that he was over 16 years of age; for this reason the employer is given 10 days to show the truth.

On the other hand, section 331a9 is intended to protect children from dangers they may not appreciate, and applies though the infant misrepresents his age. Wynn Coal Co. v. Lindsay, 230 Ky. 53, 18 S. W. (2d) 864. Section 331a9 was inserted for this purpose; that is, to protect children against dangerous employment. But the boy's employment here was not within any of the things named in the act. The only question is whether his occupation was "dangerous to the life or limb or injurious to the health or morals of such child." The fact is, as shown by the evidence, that he was simply employed as a laborer. He mainly carried water, but at other times he assisted in such work as was going on. There is no showing that any work assigned to him was dangerous to life or limb or injurious to health or morals, unless it be that the carrying of 200 pounds of cement at one time was dangerous to life or limb. But back of this is the question, was he employed to do this or was this within

the fair scope of his employment? The uncontradicted evidence is that the rule was that each person carried one bag of cement from the truck to the mixer. Who put two bags of cement on the boy does not appear. The company would not be responsible for the act of a stranger in doing this, nor would it be responsible if it was done by somebody without authority. Young men sometimes play pranks of this sort on one another. The proof merely shows that he was employed at the truck, and it also shows that the ordinary way of doing the work was for a man to carry one sack at a time. The burden was on the plaintiff to show that the thing imposed upon him which was dangerous to life or limb was within the scope of his employment. To bring the case within the statute, the employment must be dangerous to life or limb. The defendant is not answerable for something done without its authority that was dangerous to life or limb, where such a thing was not the proper way of doing the work for which the boy was employed or reasonably to be anticipated by the employer. In Bradas, etc., v. Hawkins, 202 Ky. 136, 258 S. W. 969, the judgment rests upon "the several subsections of section 331a," and not alone on section 331a2. The plaintiff's employment there was forbidden in clause 8 of section 331a9. The certificates referred to in section 331a2 as shown by sections 331a3 to 331a6, are required to show that the person is over 14 and that the work is suitable for him to do.

The only evidence as to permanent injury being that by appellant's physician, above quoted, the court erred in giving any instruction on permanent injury. For this evidence simply showed that he had some trouble from which he had not recovered up to the trial, but there was no evidence that he might not eventually recover from the trouble. In such cases there may be a recovery for pain and suffering, loss of time and impairment of power to earn money, but there can be no recovery for permanent injury, unless there is evidence tending to show an injury that is permanent. For otherwise the admission of the life tables to show the probable expectancy of life would be very misleading. The expectancy of life is only material when the injury is shown to be one which will continue through life.

The father and mother of an infant are entitled to his earnings until he is 21 years of age. The infant may not recover for the impairment of his power to earn

money before he is 21 years of age unless he has been emancipated, or the parents have waived their right to sue. When the parent has actual notice of an action instituted by a child and of the nature and extent of the recovery sought therein, and it includes all damages that might have been brought by both parent and child if two actions had been brought, and he interposes no objection to the suit by the child and does not assert his right to recover the damages to which he was entitled, he will be estopped to set up such a claim. Chesapeake & O. R. R. Co. v. Davis, 119 Ky. 641, 60 S. W. 14, 22 Ky. Law Rep. 1156; Louisville, H. & St. L. v. Lyons, 156 Ky. 222, 160 S. W. 942; Ky. Stats., sec. 331a1.

In this case the grandfather of the infant qualified as his guardian and brought the action. His mother testified on the trial and stated that his father was at home sick. This evidence standing alone would not bring the case within the above rule as to the father, but, if the grandfather was induced by the parents to qualify and bring the action for the infant, the father and mother, standing by and knowingly allowing him to do this or testifying in the case, would be estopped to assert any claim for the infant's services. On another trial the proof may be fuller on these questions.

Judgment reversed, and cause remanded for a new trial.