Argued February 21; affirmed March 28; rehearing denied
May 9, 1933

POTTER *v.* DAVIDSON ET AL.
(20 P. (2d) 409, 21 P. (2d) 785)

*B. S. Martin,* of Salem (L. R. Martin, of Salem, on the brief), for appellant.

*Ray L. Smith* and *Ronald C. Glover,* both of Salem, for respondents.

KELLY, J. On the 14th day of September, 1927, plaintiff and his father, John Potter, and Mr. and Mrs. Paul M. Shearer signed an agreement, wherein the Shearers agreed to convey to plaintiff a house and lot located at 1275 North 21st street in the city of Salem, Marion county, Oregon; and plaintiff agreed to assume a mortgage thereon of $3,000; pay $400 in monthly installments of $35 each, and to deliver a Hudson automobile at the agreed price of $700. On the 16th day of September, 1927, plaintiff placed in escrow with the Triangle Realty Company a certificate of title to the

automobile mentioned with an instrument containing instructions; and Mr. and Mrs. Shearer placed a warranty deed conveying said lot to plaintiff in escrow with said realty company with an instrument containing similar instructions. Endorsed upon each of these last named instruments is a statement to the effect that Paul M. Shearer agrees to install a pipeless furnace, cement floors in basement and garage; cement sidewalk from the front property line to the house; and to completely finish the house and garage. These endorsements conclude thus:

"It is further agreed that the purchaser is to accept house in present state of construction and in lieu of finishing same is allowed a credit of $225 for labor on the purchase price".

The Triangle Realty Company consisted of Doyle B. Smith and Carl A. Gies.

The testimony discloses that plaintiff and plaintiff's father performed labor upon the house in question and upon the sidewalk and garage.

On the 10th of December, 1927, plaintiff's father died.

On the 12th of December, 1927, Mr. and Mrs. Shearer, plaintiff, plaintiff's mother and the Triangle Realty Company executed the following agreement:

"This agreement in triplicate made and entered into this 12th day of December, 1927, by and between Paul M. Shearer and wife hereinafter called the first party, and Orvin J. L. Potter hereinafter called the second party, and the Triangel Realty Company hereinafter called the third party.

"Witnesseth: That with reference to that certain exchange agreement executed by the first and second party on the 14th day of September 1927 covering the

exchange of house and lot at 1275 N. 21st Street; same being a part (South third) of lot 17 Oakhurst Addition to the city of Salem, Oregon, owned by the first party and a Hudson Coach with Engine No. 209087, Serial No. 513514, Oregon 1927 license No. 249-709 owned by the second party together with and according to additional provisions of said agreement, and with the provisions of escrow instructions covering said transaction, signed by both first and second party respectively, receipt of a copy of both exchange agreement and escrow instructions being acknowledged by said parties.

"It is further agreed and understood by all the parties to this agreement that the second party hereby acknowledges the surrender of possession of said Hudson Coach to him by the first party; that the first party hereby acknowledges the surrender of possession to him of the premises described herein by the second party; that they both hereby acknowledge that with reference to said transaction that between themselves personally and independently of the third party they have satisfactorily arranged all differences whatsoever between themselves with respect to the aforementioned exchange and do each of them hereby exhonorate and release in every respect the third parties in every particular whatsoever in connection with the herein mentioned transaction or any of its ramifications.

"Upon the execution of this agreement the third party agrees to surrender to the second party the title certificate to the Hudson Coach mentioned herein. That upon the execution of this agreement and a certain note of $205, by the first parties that the third party agrees to surrender to the first party that certain deed placed in escrow by the first party with the third party of the premises mentioned herein.

"It is further agreed by all parties hereto that this agreement supersedes and takes the place of all prior agreements and is a termination of all matters with reference to said transaction, except as is mentioned herein.

"We the undersigned parties each acknowledge a receipt of a copy of this agreement.

Paul M. Shearer
(Paul M. Shearer)

Johanna A. Shearer
(Johanna A. Shearer)

Orvin J. L. Potter
(Orvin J. L. Potter)

Mrs. Laura C. Potter

The Triangle Realty Company
By D. B. Smith''.

Contemporaneously with the execution of the above agreement the Hudson automobile aforesaid was delivered to plaintiff. The note mentioned therein for $205 was executed by Mr. and Mrs. Shearer and the warranty deed theretofore placed in escrow as above stated was returned to them. Mr. and Mrs. Shearer also conveyed said premises to defendants, R. E. Anderson, now deceased, J. M. Rupert and Floyd C. Meyer.

On December 16, 1927, plaintiff filed with the county clerk of Marion county, Oregon, the claim of lien for labor performed upon said house, sidewalk and garage, which he is hereby seeking to foreclose.

Plaintiff was born on October 7, 1907. His attitude is that, because of his minority, his contracts could be disaffirmed and that, by filing his claim of lien and also by instituting and prosecuting this suit, he disaffirmed both the contract of purchase and the agreement rescinding it.

Thus it will be noted that plaintiff is asserting his privilege of infancy. "The privilege of infancy is to be used as a shield, and not as a sword". 2 Kent's Comm. 240; *Rice v. Butler,* 160 N. Y. 578 (55 N. E.

275, 47 L. R. A. 303, 73 Am. St. Rep. 703) ; *Shutter v. Fudge,* 108 Conn. 528 (143 Atl. 896). A court of equity should not disregard an infant's disability in order to give effect to his personal privilege. We are therefore impelled to consider whether plaintiff may maintain this suit. It is a suit to foreclose a purported mechanic's lien. The courts generally treat the lien as security for only a valid contractual claim. Phillips on Mechanics' Liens, (3d Ed.) 57, § 38; *McCarty v. Carter,* 49 Ill. 53 (95 Am. Dec. 572) ; *Alvey v. Reed, Guardian,* 115 Ind. 148 (17 N. E. 265, 7 Am. St. Rep. 418) ; *Bloomer v. Nolan,* 36 Neb. 51 (53 N. W. 1039, 38 Am. St. Rep. 690) ; *Hall v. Acken,* 47 N. J. Law (18 Vroom) 340; *Richardson v. O'Connell,* 88 Mo. App. 12; *San Francisco Paving Co. v. Fairfield,* 134 Cal. 220 (66 P. 255) ; *Waldermeyer v. Loebig,* 183 Mo. 363 (81 S. W. 904) ; *DeRanko v. Lee,* (Mo. App.) 200 S. W. 79; *Lepage v. Laux,* (Mo. App.) 211 S. W. 898; *Lee v. Tonsor,* 62 Okl. 14 (161 P. 804) ; *Granquist v. Western Tube Co.,* 240 Ill. 132 (88 N. E. 468) ; *Rittenhouse & Embree Co. v. Warren Const. Co.,* 264 Ill. 619 (106 N. E. 466) ; *Meade Plumbing, Heating & Lighting Co. v. Irwin,* 77 Neb. 385 (109 N. W. 391) ; *Eccles Lumber Co. v. Martin,* 31 Utah 241 (87 P. 713) ; *Virginia Supply Co. v. Calfee,* 71 W. Va. 300 (76 S. E. 669) ; *J. W. White Co. v. Griffith,* 127 Me. 516 (145 Atl. 134) ; *T. J. Stewart Lumber Co. v. Derry,* 122 Okla. 208 (253 P. 485) ; *Littler v. Friend,* 167 Ind. 36 (78 N. E. 238) ; *Wager v. Briscoe,* 38 Mich. 587; *Dressel v. French,* 7 How. Pr. 350; *Muldoon v. Pitt,* 54 N. Y. 269; *Nicholson v. Nichols,* 115 N. C. 200 (20 S. E. 294) ; *Sellwood Lumber Co. v. Monnell,* 26 Or. 267 (38 P. 66).

██ In the absence of emancipation, plaintiff was without contractual capacity with respect to his services during infancy. He has neither pleaded nor proven emancipation. On the contrary, in the first paragraph

of his amended complaint, he alleges that, subsequent to his father's death, during his minority he was living with his mother. In the absence of emancipation, if otherwise the facts would have justified it, the father might have maintained a lien of the character in suit in his own name for the services of his minor son. *Howard v. Franklin*, 32 Ga. App. 737 (124 S. E. 554); *Cox v. Adams & Co.*, 5 Ga. App. 296 (63 S. E. 60); *McElmurray v. Turner*, 86 Ga. 215 (12 S. E. 359).

■ It is significant that plaintiff's father, while not expressly made a party thereto, signed the agreement of purchase. Witness Burger, a salesman for the Triangle Realty Company, testifying for plaintiff, said that, because plaintiff was not of age, that realty company had to get plaintiff's father to sign the contract. Plaintiff, when asked what Mr. Shearer said to him about doing the work, testified:

"Well, I don't just remember what was said because it has been a long while ago. My father was with me at that time and him and Mr. Shearer talked together, so I couldn't tell you exactly what was said between the three of us".

This tends strongly to refute the idea that plaintiff has been emancipated. It is to be borne in mind too that plaintiff's mother, while not expressly made a party thereto, signed the contract to rescind.

It is true that, in fixing the value of his services in his direct examination, plaintiff testified as follows:

"Q. Now what was the reasonable value of such labor as you performed there?

"A. Well, at that time, a house like that, the contract to finish the inside, at least was between $250 and $300.

"Q. What I mean, for—how much a day was labor worth at that time?

"A. It was worth six dollars a day.

"Q. Was that what you were charging other people?

"A. That is what I was getting.

"Q. For your work? You had been working for other people prior to that time? A. I had.

"Q. And getting six dollars a day? A. I was.

"The Court: That was the going wage? A. Yes, sir".

And upon his cross-examination, plaintiff further testified as follows:

"Q. You state that you had been working as a carpenter for about eight years, did you begin working as a carpenter at the age of eleven?

"A. Why I think I could, yes, why shouldn't I?

"Q. I asked if you did. A. I did.

"Q. For whom did you work? A. My father.

"Q. Did you go out and work for any other person?

"A. I worked with him.

"Q. Then it was your father who gave you six dollars per day was it? A. Yes, sir.

"Q. You didn't work for any other at that rate?

"A. I worked with him and then after I had been working for a while, I got more, I went out and got it on the outside".

It is evident that the foregoing testimony was offered upon the issue of the value of plaintiff's services, and not upon the question of plaintiff's emancipation. In so far as it tends to prove emancipation, we think it is overcome by the circumstances heretofore mentioned.

■ It is well settled that, in the absence of emancipation, the father is entitled to the earnings of his minor children. *Fuller v. Blair*, 104 Me. 469 (72 Atl. 182); *Doyle v. Rochester Times Union*, 232 App. Div. 878 (249 N. Y. S. 30); *Vincennes Bridge Co. v. Guinn's Guardian*, 231 Ky. 772 (22 S. W. (2d) 300); *Lessard v. Great Falls Woolen Co.*, 83 N. H. 576 (145 Atl. 782, 63 A. L. R.

1142); *Weimhold v. Hyde,* (Tex. Civ. App.) 294 S. W. 899; *Shipp v. United Stage Lines,* 192 N. C. 475 (135 S. E. 339); *Jones v. McCowen,* 34 Ga. App. 801 (131 S. E 290); *Southern Ry. Co. v. King Bros. & Co.* 136 Ga. 173 (70 S. E. 1109); *Harper v. Utsey,* (Tex. Civ. App.) 97 S. W. 508; *Bell v. Hallenback,* (Ohio) Wright 752; *Halliday v. Miller,* 29 W. Va. 424 (1 S. E. 821, 6 Am. St. Rep. 653); *Allen v. Allen,* 60 Mich. 635 (27 N. W. 702); *Donegan v. Davis,* 66 Ala. 362; *The Hattie Low* (D. C.) 14 Fed. 880; *Stovall v. Johnson,* 17 Ala. 14; *Bundy v. Dodson,* 28 Ind. 295; *Hollingworth v. Swedenborg,* 49 Ind. 378 (19 Am. Rep. 687); *Wardrobe v. Miller,* 53 Cal. App. 370 (200 P. 77); *Doyle v. Carney,* 190 N. Y. 386 (83 N. E. 37); *Winebremer v. Eberhardt,* 137 Mo. App. 659 (119 S. W. 530); *Freeman v. Shaw,* 173 Mich. 262 (139 N. W. 66); *Benson v. Remington,* 2 Mass. 113; *Shute v. Dorr,* 5 Wend. (N. Y.) 204.

The only apparent exception is with respect to bounty money for military service.

■ Another insuperable obstacle, which prevents plaintiff from prevailing, is his utter failure to prove that Mr. Shearer employed him to perform the services in question. The statute requires the lien claimant to state the name of the person by whom he was employed. Section 51-105, Oregon Code 1930. Pursuant to that provision of the statute, plaintiff stated that he was employed by Paul M. Shearer. It is true that when asked at whose request he did the work, plaintiff said: "Paul M. Shearer". But his inability, as above indicated, to remember what Mr. Shearer said and the unequivocal assertion that the conversation was between plaintiff's father and Mr. Shearer, constitutes an entire lack of proof that Mr. Shearer employed plaintiff to do the work in question.

The record fairly discloses that, when the services were performed, plaintiff and his father were working at their own instance and for their own purposes.

■ If it be suggested that by acting as guardian ad litem for plaintiff in instituting and prosecuting this suit to foreclose the lien in question, plaintiff's mother thereby emancipated plaintiff, it needs only to be said that such emancipation could not deprive the personal representative of plaintiff's father of his right to plaintiff's earnings, if any, accruing prior thereto and while plaintiff's father was living. In other words, such a belated emancipation would not have the effect of transferring to plaintiff a matured claim owned by and due to the estate of the father.

Neither could the course taken by plaintiff's mother after the death of his father constitute a ground of estoppel against the father's personal representative.

In thus treating the subject, we do not mean to intimate that there is any enforcable claim in favor of the father's estate. ·That question cannot be determined in this case.

The decree of dismissal is affirmed.

RAND, C. J., and BELT, J., concur.

---

ROSSMAN, J. (specially concurring). In concurring with the majority in their conclusion that the decree of the circuit court should be affirmed, I prefer to base my conclusion upon the fact that the minor did not perform his services at the request of the individual whose interest in the property he desires to subject to a lien for his charges. Section 51-101, Oregon Code

1930, provides that a mechanic who performs labor in the construction of a building ''shall have a lien upon the same for the work or labor done or transportation or material furnished at the instance of the owner''. It is plainly evident that the minor did not perform his work at the instance of Paul Shearer. He performed the work while he himself held a contract for the purchase of the property. His subsequent disaffirmance of the contract did not alter the fact that the Shearers never requested him, either expressly or impliedly, to perform the work.

<hr>

Petition for rehearing denied May 9, 1933

ON PETITION FOR REHEARING

(21 P. (2d) 785)

KELLY, J. Plaintiff accompanies his motion for rehearing with a brief indicating the following points: (1) That the defense of infancy is personal to the minor; (2) that plaintiff performed the work in question at the instance of Paul M. Shearer, as owner; (3) that by reason of plaintiff's disaffirmance the contract under which plaintiff did said work became void ab initio, and, therefore, the rights of the parties are to be determined as if said contract had never been made; and (4) that the foreclosure of a mechanic's lien is a proceeding in rem.

█ As to point one, the fact of plaintiff's infancy was presented in this case by plaintiff. Plaintiff's case depends upon it. A majority of the department of the court, in which this case was heard, are of the opinion that when plaintiff presented the fact of his infancy and asked affirmative relief because of it, he there-

upon placed a duty upon the court to give full effect to that status, and not to consider it in so far, merely, as it is helpful to plaintiff's claim.

As to point two, we treated that matter in the original opinion and now adhere to the holding that plaintiff performed the work in question at his own instance, and that of his father, and not at the instance of Paul M. Shearer.

■ As to point three, conceding that ab initio plaintiff's disaffirmance nullified his contract to purchase, we are then to determine, as in the absence of an express contract, what contract is to be implied. In this, a majority of the department, hearing this case, think that where a minor, who has not been emancipated and whose father is living, performs work for another without any express contract, the law implies a contract for the benefit of the father.

The cases to which our attention has been called, indicating that upon disaffirmance of an express contract the minor is entitled to a recovery, either take no cognizance of the question of whether the minor had been emancipated or not, or disclose that the minor had been emancipated, or that his parent or guardian was not available.

■ As to point four, the fact that the foreclosure of a mechanic's lien is in the nature of a proceeding in rem does not deprive the father of his right to the services of his unemancipated minor son, nor does it relieve the lien claimant from the necessity of correctly stating in his claim "the name of the person by whom he was employed or to whom he furnished the materials".

To the authorities cited in the original opinion, treating a mechanic's lien as security for only a valid

contractual claim, the writer takes this opportunity, thus belatedly, to add the case of *Christman v. Salway et al.,* wherein Mr. Justice (now Chief Justice) RAND says:

"Under our statute, to create the right to a lien, there must be a contract for the doing of that for which the statute gives the lien". Christman v. Salway, et al., 103 Or. 666, 680 (205 P. 541).

The petition for rehearing is denied.

ROSSMAN and BELT, JJ., concur.

RAND, C. J., did not participate in this opinion.